**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

PRIDE MOBILITY PRODUCTS
CORPORATION,

      Plaintiff,

          v.

PERMOBIL, INC.,

      Defendant.

CIVIL ACTION
No. 2:13-cv-01999-LDD

**DECLARATION OF ANNA BONNY CHAUVET IN SUPPORT OF
DEFENDANT PERMOBIL, INC.'S MOTION TO STAY LITIGATION PENDING
*INTER PARTES* REVIEW OF U.S. PATENT NOS. 8,408,343 AND 8,408,598,
AND FOR A PROTECTIVE ORDER STAYING DISCOVERY PENDING
<u>THE COURT'S RULING ON DEFENDANT'S MOTION TO STAY</u>**

I, Anna Bonny Chauvet, declare as follows:

1.     I am a senior associate at the firm Wilmer Cutler Pickering Hale and Dorr LLP,

counsel of record for Permobil, Inc.  I am admitted to the bars of the Commonwealth of Virginia

and the District of Columbia.  I make this declaration of my own personal knowledge.

2.     Attached hereto as Exhibit 1 are true and correct copies of the Petitions for *Inter*

*Partes* Review Under 35 U.S.C. §§ 311-318 that Permobil, Inc. filed on July 1, 2013 with the

United States Patent and Trademark Office ("PTO") regarding Plaintiff Pride Mobility Products

Corporation's U.S. Patent Nos. 8,408,343 and 8,408,598.

3.     Attached hereto as Exhibit 2 is a true and correct copy of the PTO's *Inter Partes*

Reexamination Filing Data – September 30, 2012, obtained from the PTO's website at

http://www.uspto.gov/patents/stats/inter_parte_historical_stats_roll_up_EOY2012.pdf.

4.      Attached hereto as Exhibit 3 is a true and correct copy of the PTO's Process

Production Report, Preliminary Report, obtained from the PTO's website at

http://www.uspto.gov/ip/boards/bpai/stats/process/fy2013_may_b.pdf.

I declare the foregoing is true and correct under penalty of perjury.

Date: July 2, 2013

Anna Bonny Chauvet

# Exhibit 1

Filed on behalf of Permobil Inc.
By:   David L. Cavanaugh, Reg. No. 36,476
      Owen K. Allen, Reg. No. 71,118
      Wilmer Cutler Pickering Hale and Dorr LLP
      1875 Pennsylvania Ave., NW
      Washington, DC 20006
      Tel:  (202) 663-6000
      Email:  David.Cavanaugh@wilmerhale.com
              Owen.Allen@wilmerhale.com

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

_____

PERMOBIL INC.
Petitioner

v.

Patent Owner of
U.S. Patent No. 8,408,343 to Puskar-Pasewicz et al.

**PETITION FOR *INTER PARTES* REVIEW OF
U.S. PATENT NO. 8,408,343
UNDER 35 U.S.C. § 312 AND 37 C.F.R. § 42.104**

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

# TABLE OF CONTENTS

I.      MANDATORY NOTICES .................................................................1

    A.      Real Party-in-Interest .........................................................1

    B.      Related Matters .................................................................1

    C.      Counsel ...........................................................................2

    D.      Service Information ...........................................................2

II.     CERTIFICATION OF GROUNDS FOR STANDING ..................2

III.    OVERVIEW OF CHALLENGE AND RELIEF REQUESTED...................2

    A.      Prior Art Patents and Printed Publications...........................3

    B.      Grounds for Challenge .......................................................4

IV.     LEGAL PRINCIPLES.........................................................4

V.      CLAIM CONSTRUCTION ..............................................6

VI.     OVERVIEW OF THE '343 PATENT ...................................6

    A.      State of the Art of Wheelchairs in 2005................................7

    B.      The '343 Patent Claims.....................................................9

    C.      Summary of the Prosecution History of the '343 Patent ..................12

VII.    THE CHALLENGED CLAIMS ARE UNPATENTABLE.........................14

    A.      The Primary References ....................................................14

        1.      Mulhern '715 ........................................................14

        2.      Goertzen ...............................................................15

        3.      Fought ..................................................................15

    B.      The Low Pivot References ................................................17

VIII.   IDENTIFICATION OF HOW THE CHALLENGED CLAIMS ARE
        UNPATENTABLE................................................................................18

     A.   Independent Claim 1 ........................................................................18

          1.   Claim 1 is Unpatentable over Mulhern '715 ............................19

          2.   Claim 1 is Unpatentable over Mulhern '715 in
               View of Any One of the Low Pivot References.......................24

          3.   Claim 1 is Unpatentable over Goertzen in View of
               Any of the Low Pivot References............................................34

          4.   Claim 1 Is Unpatentable over Fought in View of
               Any of the Low Pivot References............................................39

     B.   The Dependent Claims Are Unpatentable .........................................46

          1.   Claim 2 is Unpatentable over Mulhern '715 in
               View of Hosino, Goertzen in View of Hosino, or
               Fought in View of Hosino .......................................................47

          2.   Claim 3 is Unpatentable over Mulhern '715 in
               View of Hosino, Goertzen in View of Hosino, or
               Fought in View of Hosino .......................................................48

          3.   Claim 4 is Unpatentable over Mulhern '715 in
               View of Any of the Low Pivot References,
               Goertzen in View of Any of the Low Pivot
               References, or Fought in View of Any One of the
               Low Pivot References...............................................................49

          4.   Claim 5 is Unpatentable over Goertzen in View of
               Any of the Low Pivot References............................................51

          5.   Claim 6 is Unpatentable over Mulhern '715 in
               View of Any of the Low Pivot References,
               Goertzen in View of Any of the Low Pivot
               References, or Fought in View of Any of the Low
               Pivot References ......................................................................52

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

6.     Claim 7 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, or Goertzen in View of Any of the Low Pivot References ................................................................. 53

7.     Claim 8 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in View of Any of the Low Pivot References, or Fought in View of Any of the Low Pivot References ......................................................... 54

8.     Claim 9 is Unpatentable over Goertzen in View of Any of the Low Pivot References ............................................. 56

9.     Claim 10 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in Vie of Any of the Low Pivot References, or Fought in View of Any of the Low Pivot References ...................................................... 57

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Pride Mobility Products Corp. v. Permobil, Inc.*,
   No. 2:13-cv-01999-LDD (E.D. Pa. filed 4/15/2013)............................................1

*Pride Mobility Products Corp. v. Permobil, Inc.*,
   No. 2:12-cv-03931 (E.D. Pa.) ................................................................................1

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)...................................................................................................4

*In re ICON Health and Fitness, Inc.*,
   496 F.3d 1374 (Fed. Cir. 2007) .............................................................................6

*KSR Int'l Co. v. Teleflex, Inc.*,
   550 U.S. 398 (2007)............................................................................................4, 5

*Rockwell Int'l Corp.v. United States*,
   147 F.3d 1358 (Fed. Cir. 1998) .............................................................................4

**STATUTES**

35 U.S.C. § 102(a) ......................................................................................................3

35 U.S.C. § 102(b) ..................................................................................................3, 7

35 U.S.C. § 103 ........................................................................................................4, 5

35 U.S.C. § 112 ...........................................................................................................6

35 U.S.C. § 314(a) ......................................................................................................4

**OTHER AUTHORITIES**

Rule 42.22(a)(1) ..........................................................................................................2

Rule 42.100(b) .............................................................................................................6

iv

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

Rule 42.104(a)................................................................................2

Rule 42.104(b)(1)-(2)........................................................................2

Rule 42.104(b)(4)-(5)......................................................................18

77 Fed. Reg. 48764 (Aug. 14, 2012) .......................................................6

IPR2013-00126, Paper No. 10, Decision Instituting *Inter Partes* Review ............13

## I.   MANDATORY NOTICES

### A.   Real Party-in-Interest

Permobil Inc. ("Petitioner") is the real party-in-interest and submits this *inter partes* review Petition ("Petition") for review of certain claims of U.S. Patent No. 8,408,343 (the "'343 patent").

### B.   Related Matters

The following litigation matter would affect or be affected by a decision in this proceeding: *Pride Mobility Products Corp. v. Permobil, Inc.*, No. 2:13-cv-01999-LDD (E.D. Pa. filed 4/15/2013).  The litigation involves two patents: the '343 patent and U.S. Patent No. 8,408,598 (the "'598 patent").  The parent patent of the '598 patent – U.S. Patent No. 8,181,992 (the "'992 patent) – is the subject of an *inter partes* reexamination proceeding, Control No. 95/002,355.[1]  The claims of the '343 patent are the subject of this Petition.  A separate petition for *inter partes* review of the '598 patent is being filed concurrently with this petition.  Because the technology and disclosure in the patents are similar and for the sake of administrative efficiency and consistent outcome, Petitioner requests that the

---

[1] The '992 patent is also the subject of a district court litigation—*Pride Mobility Products Corp. v. Permobil, Inc.*, No. 2:12cv03931 (E.D. Pa.)—that is currently stayed pending the outcome of the *inter partes* reexamination proceeding.

Patent Trial and Appeals Board ("PTAB") have a single Administrative panel

address these two *inter partes* reviews.

### C.    Counsel

Lead Counsel: David L. Cavanaugh (Registration No. 36,476)

Backup Counsel: Owen K. Allen (Registration No. 71,118)

### D.    Service Information

Email:  David.Cavanaugh@wilmerhale.com

Post and hand delivery:    Wilmer Cutler Pickering Hale and Dorr LLP

1875 Pennsylvania Ave, NW

Washington, DC 20006

Telephone: 202-663-6025              Facsimile: 202-663-6363

## II.    CERTIFICATION OF GROUNDS FOR STANDING

Petitioner certifies pursuant to Rule 42.104(a) that the patent for which

review is sought is available for *inter partes* review and that Petitioner is not

barred or estopped from requesting an *inter partes* review challenging the patent

claims on the grounds identified in this Petition.

## III.    OVERVIEW OF CHALLENGE AND RELIEF REQUESTED

Pursuant to Rules 42.22(a)(1) and 42.104(b)(1)-(2), Petitioner challenges

claims 1-10 of the '343 patent (Ex. 1001).

2

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

## A.     Prior Art Patents and Printed Publications

Petitioner relies upon the following patents and printed publications:

1.   U.S. Patent Application Publication No. 2005/0077715 ("Mulhern '715"; Ex. 1002), which has a filing date of October 8, 2004, and is prior art to the '343 patent under 35 U.S.C. § 102(a).

2.   International Publication No. WO 02/34190 ("Goertzen"; Ex. 1003), which was published on May 2, 2002, and is prior art to the '343 patent under 35 U.S.C. § 102(b).

3.   U.S. Patent Application Publication No. 2003/0075365 ("Fought"; Ex. 1004), which was published on April 24, 2003, and is prior art to the '343 patent under 35 U.S.C. § 102(b).

4.   U.S. Patent No. 6,454,286 ("Hosino"; Ex. 1005), which issued on September 24, 2002 and is prior art to the '343 patent under 35 U.S.C. § 102(b).

5.   U.S. Patent Application Publication No. 2003/0205420 ("Mulhern '420"; Ex. 1006), which was published on November 6, 2003, and is prior art to the '343 patent under 35 U.S.C. § 102(b).

6.   Japanese Patent No. JP 2001104391 ("Harakawa"; Ex. 1007), which was published on April 17, 2001, and is prior art to the '343 patent under 35 U.S.C. § 102(b).

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

**B.    Grounds for Challenge**

Petitioner requests cancellation of claims 1-10, the challenged claims, as

unpatentable under 35 U.S.C. § 103.

This Petition, supported by the declaration of Dr. Mark Richter ("Richter

Declaration" or "Richter Decl."; Ex. 1008) filed with this Petition, demonstrates

that there is a reasonable likelihood that Petitioner will prevail with respect to at

least one of the challenged claims and that each of the challenged claims is

unpatentable for the reasons cited in this petition. *See* 35 U.S.C. § 314(a).

**IV.    LEGAL PRINCIPLES**

The challenged claims are unpatentable because they are obvious under 35

U.S.C. § 103. A claim is invalid if it would have been obvious—that is,

> if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have
> been obvious at the time the invention was made to a person having
> ordinary skill in the art to which [the] subject matter pertains.

35 U.S.C. § 103; *see also Rockwell Int'l Corp.v. United States*, 147 F.3d 1358,

1364 (Fed. Cir. 1998).

In *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 415 (2007), the

U.S. Supreme Court addressed the issue of obviousness and provided an

"expansive and flexible" approach that is consistent with the "broad inquiry" set

forth in *Graham v. John Deere Co.*, 383 U.S. 1 (1966). According to the Supreme

Court, a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton," *KSR*, 550 U.S. at 421, and "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle," *id.* at 420.  The Court held that

> [w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance the fact that a combination was obvious to try might show that it was obvious under [35 U.S.C.] § 103.

*Id.* at 421.  Thus, *KSR* focused on whether a combination of known elements could be patentable if it yielded predictable results.  The Court's guidance was clear: it may not.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id.* at 416.  Further, "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."  *Id.* at 417.

The Board must ask, as guided by *KSR*, whether the challenged claims recite an improvement that is "more than the predictable use of prior art elements according to their established functions."  *Id.* at 417.  The Board should conclude, based on the information in this Petition, that the challenged claims are merely a

5

predictable combination of known elements that are used according to their established functions, and that they are therefore unpatentable, and an *inter partes* review of the challenged claims should therefore be instituted.

## V.    CLAIM CONSTRUCTION

A claim in *inter partes* review is given the "broadest reasonable construction in light of the specification." 37 C.F.R. § 42.100(b). Any claim term which lacks a definition in the specification is therefore also given a broad interpretation. *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). For the purposes of this proceeding, claim terms are to be given their broadest reasonable interpretation in light of the specification as commonly understood by those of ordinary skill in the art. Moreover, should the Patent Owner, in order to avoid the prior art, contend that the claims have a construction different from their broadest reasonable construction, the appropriate course is for the Patent Owner to seek to amend the claims to expressly correspond to its contentions in this proceeding. *See* 77 Fed. Reg. 48764 (Aug. 14, 2012). Any such amendment would only be permissible if the proposed amended claims comply with 35 U.S.C. §112.

## VI.    OVERVIEW OF THE '343 PATENT

The application that issued as the '343 patent (Ex. 1001) was filed on October 22, 2012, and is a continuation of U.S. Patent No. 8,292,010, which was filed on June 24, 2010, which is a continuation of U.S. Patent No. 7,766,106,

which was filed on July 14, 2006.  The '343 patent claims priority to provisional

application nos. 60/699,201, filed on July 14, 2005, and 60/727,537, filed on

October 27, 2005.

### A.    State of the Art of Wheelchairs in 2005

Powered wheelchairs having a frame, main drive wheels, front anti-tip or

caster wheels, and rear wheels were well-known in the art at the time to which the

'343 patent claims priority (*i.e.*, 2005).  *See* Richter Decl. ¶ 14 (Ex. 1008).

Goertzen, which was published in 2002, illustrates a powered wheelchair having

these features, as is shown in Figure 4A:



U.S. Patent 8,408,343
Petition for *Inter Partes* Review

**Goertzen, Figure 4A (Prior Art) (Ex. 1003)**

By 2005, persons of skill in the art had long used drive assemblies to power wheelchairs.  These drive assemblies were routinely pivotally coupled to wheelchair frames at a pivot axis.  *See* Richter Decl. ¶ 15 (Ex. 1008).  Goertzen again provides an example of such a configuration in Figure 4A, above.

It was also well known in the art to rigidly extend a front arm from a mounting plate so that the drive, the mounting plate, and the front arm pivoted together about the pivot axis.  *See* Richter Decl. ¶ 16 (Ex. 1008).  Again, Goertzen (in Fig. 5B, below) shows these three components rigidly attached together and pivoting around a pivot axis:



**Goertzen, Figure 5B (Prior Art) (Ex. 1003)**

8

Front wheels that raised vertically in response to motor torque applied to the drive wheels were also known in the art. *See* Richter Decl. ¶ 17 (Ex. 1008). Goertzen, for example, shows this feature in Figure 5B, above.

It was also well known in the art that a pivot axis could be placed at various locations on a wheelchair. Wheelchairs with a relatively high pivot axis, such as the chair in Goertzen, were known. *See* Richter Decl. ¶ 18 (Ex. 1008). Wheelchairs with a relatively low pivot axis, such as the chair in Hosino Figure 2 (shown below), were also known.



**Hosino, Figure 2 (Prior Art) (Ex. 1005)**

### B.  The '343 Patent Claims

The '343 patent does nothing more than describe and claim a combination of these same old features. *See* Richter Decl. ¶ 19 (Ex. 1008). The '343 patent

describes a powered wheelchair having a pair of drive wheels, a pair of rear wheels, and a pair of front wheels. *See, e.g.*, '343 patent, Abstract (Ex. 1001). The patent provides a drive assembly for powering the drive wheels and a front arm assembly that is coupled to the front wheels and is rigidly attached to a mounting plate. *See, e.g.*, *id.* (Ex. 1001). The drive assembly, mounting plate, and front arm assembly are configured to pivot together about a pivot axis. *See, e.g.*, *id.* 3:5-7, 8:58-67, Fig. 3B (Ex. 1001). The patent provides that the pivot axis is located at a point that is below a line connecting the front wheel axis and the drive wheel axis. *See, e.g.*, *id.* 10:60-63 (Ex. 1001). The patent also provides that the front caster wheels are urged upwards when torque is applied to the drive wheels and the wheels are placed against a curb. *See, e.g.*, *id.* 11:2-14 (Ex. 1001).

Figures 3A and 4B, reproduced below, illustrate an embodiment of the wheelchair described in the '343 patent. In Figure 4B, a line connecting the front wheel axis and the drive wheel axis has been drawn over the figure to show the relative location of the pivot axis (i.e., below-the-line). The '343 patent states that the inventors "believe that it is advantageous for pivot axis height H2 to be approximately below a line drawn between the drive wheel axis and axis of rotation of front caster 66," although the patent does not give any specific reasons for placing the pivot axis below this particular line. Instead, the patent states that low pivot axes in general were known in the art and "may have been disfavored"

10

for several reasons, but that they are desirable in the present invention because they

create "an upward … force vector" on the front wheels that "may be helpful for

ascending especially high obstacles."[2]  *See* '343 patent, col. 10, l. 54-col. 11, l. 14;

col. 11, l. 55-col. 12, l. 11 (Ex. 1001).



**Line Connecting Wheel Axes**

FIG. 3A

**Pivot Axis**

FIG. 4B

**'343 Patent, Figures 3A and 4B (Ex. 1001)**

The claimed wheelchair is merely the combination of known elements from

existing wheelchairs where each element performs as expected and the

combination yields predictable results.  *See* Richter Decl. ¶ 21 (Ex. 1008).  As

---

[2] As will be explained below in Section VIII.A.2.a), it was well known in the art

that wheelchairs with low pivot axes provided greater upward force vectors on the

front wheels than wheelchairs with higher pivot axes, and thus were better at

ascending obstacles.  *See, e.g.* Hosino 6:50-65, Figs. 11-12 (Ex. 1005).

shown by the Exhibits and the Richter Declaration, the claimed wheelchair would have been obvious to a person of ordinary skill in the art.

### C.    Summary of the Prosecution History of the '343 Patent

The claims of the '343 patent were allowed based on an error by the Examiner regarding the disclosure in the Fought reference.  After rejecting the pending claims as obvious over Fought in view of Harakawa (*see* '343 Patent File History, 12/26/2012 Non-Final Office Action (Ex. 1011)), the Examiner "agreed" with the Patent Owner that Fought did not disclose a front arm that rigidly extended from the mounting plate.  *See* '343 Patent File History, 1/22/2013 Applicant-Initiated Interview Summary (Ex. 1009).  This, however, was a mistake–Fought clearly teaches a rigidly-extending front arm in the *second* embodiment of the reference, as is demonstrated in the chart below comparing the Patent Owner's claim amendment (with new claim language underlined) (*see* '343 Patent File History, 1/11/2013 Amendment and Response at 2 (Ex. 1010)) with the disclosure of Fought.

| 1/11/13 Claim 1 Amendment | Disclosure in *Fought* |
|---|---|
| a forward-extending arm <u>rigidly extending from the mounting plate such that the mounting plate, drive, and front arm are together configured to pivot about the pivot axis</u> | Illustrated in FIG. 7 is a side elevational view of a second embodiment of the present invention.  The second embodiment differs from the first in that the drive assembly 202 and the pivot |

| | |
|---|---|
| | arm 208 are **rigidly** coupled together. That is, the drive assembly 202 **does not pivot independently** of pivot arm 208. Fought ¶ [0031] (Ex. 1004) (emphases added). |

The very limitations added to the claims to distinguish Fought during prosecution are explicitly disclosed in Fought.  Had the Examiner considered the plain language of Fought, he could not have properly allowed the claims as Fought clearly teaches the claim limitations added to overcome the reference.  The Board has acknowledged that although prior consideration by examiners of a claim feature based on the same or similar prior art should be considered, "the patent owner should not expect that the Board necessarily would come to the same conclusion."  *See* IPR2013-00126, Paper No. 10, Decision Instituting *Inter Partes* Review, at 26.

Furthermore, the Patent Owner did not argue that Fought and Harakawa failed to disclose any of the other elements of the claims.  Moreover, if the Examiner had all of the art presented here before him during prosecution, even with the amendment, he never would have had a basis to allow these claims to issue.

## VII.   THE CHALLENGED CLAIMS ARE UNPATENTABLE

The challenged claims recite features long known by persons of skill in the art in the field of wheelchair design.  *See* Richter Decl. ¶¶ 19-21 (Ex. 1008).  The purported invention is a combination of known features, all of which were well known to those skilled in the art before and at the time to which the '343 patent claims priority.  In the claimed combinations, the structures all have known functions that perform in expected ways.  *See id.* ¶ 21 (Ex. 1008).  Based on the prior art cited above and described below, the claimed limitations of the alleged invention perform known functions with an expected result.

The prior art falls into two categories: (1) the primary references (Mulhern '715, Goertzen, and Fought); and (2) prior art references that disclose or make obvious the claimed pivot point that is located below a straight line between the front wheel axis and the drive wheel axis (Hosino, Mulhern '420, and Harakawa, *i.e.*, the "Low Pivot References").  The Low Pivot References also teach, make obvious, and provide one of ordinary skill in the art with ample reason and motivation to place a front arm pivot point below this line between the wheel axes.

### A.    The Primary References

#### 1.    Mulhern '715

Mulhern '715 teaches a powered wheelchair having a frame, a pair of main drive wheels, a drive-train assembly that provides power to the main drive wheels,

a pair of front suspension arms with anti-tip or caster wheels on the ends, and a pair of mounting brackets pivotally coupled to the frame at a pivot axis. *See, e.g.*, Mulhern '715 Fig. 5, 6, ¶ [0033] (Ex. 1002). Mulhern '715 also discloses that the front wheels raise off the ground in response to acceleration of the drive wheels, and the drive-train assembly, mounting bracket, and front arm all pivot around the pivot axis together. *See, e.g.*, *id.* Figs. 4, 7, ¶¶ [0038]-[0039], [0045]-[0047] (Ex. 1002).

### 2.    Goertzen

Goertzen teaches a powered wheelchair having a frame, a pair of main drive wheels, a drive assembly with a motor to drive the main drive wheels, a pair of front arms with front caster wheels attached at the ends, and a pair of mounting brackets pivotally coupled to the frame. *See, e.g.*, Goertzen Fig. 4A; p. 5, l. 12-p. 6, l. 15 (Ex. 1003). Goertzen further teaches a mechanism for raising the front caster wheels when the chair accelerates, and lowering the front caster wheels when the chair decelerates. *See, e.g.*, *id.* Figs. 4B, 4C, p. 8, l. 23-p. 9, l. 18 (Ex. 1003).

### 3.    Fought

Fought teaches a powered wheelchair having a suspension system for traversing obstacles and rough terrain. *See, e.g.*, Fought Abstract (Ex. 1004). Fought discloses a wheelchair having a frame, a pair of main drive wheels, a drive

assembly for driving the main wheels, a pair of front pivot arms with front caster wheels, and a mounting bracket pivotally coupled to the frame at a pivot axis. *See, e.g.*, *id.* Figs. 3, 4A, ¶¶ [0022]-[0026] (Ex. 1004).  Fought further teaches a mechanism for raising the front caster wheels when the chair accelerates, wherein the drive assembly, mounting bracket, and front arm together pivot about the pivot axis. *See, e.g.*, *id.* Fig. 4A, ¶ [0029] (Ex. 1004).

As discussed *supra* in Section VI.C, during prosecution of the '343 patent, the Examiner allowed the claims based on an apparent error regarding the disclosure of the Fought reference.  After rejecting the pending claims as obvious over Fought in view of Harakawa, the Examiner agreed with the Patent Owner that Fought did not disclose a front arm that rigidly extended from the mounting plate. *See* '343 Patent File History, 1/22/2013 Applicant-Initiated Interview Summary (Ex. 1009).  Fought, however, <u>*does*</u> teach a front arm that rigidly extends from a mounting plate—the second embodiment disclosed in Fought "differs from the first in that the drive assembly 202 and the pivot arm 208 are ***rigidly coupled together***.  That is, the drive assembly 202 ***does not pivot independently*** of pivot arm 208." *See* Fought ¶ [0031], (Ex. 1004) (emphases added).  The very limitation added to the claims to distinguish Fought during prosecution is explicitly disclosed in Fought.

### B.    The Low Pivot References

Hosino (Ex. 1005), Mulhern '420 (Ex. 1006), and Harakawa (Ex. 1007), *i.e.*, the "Low Pivot References," disclose and/or render obvious the limitation requiring the front arm pivot to be below a line connecting the front wheel axis and the drive wheel axis.

*Hosino* discloses a powered wheelchair with a loop frame having a pair of drive wheels, a front caster wheel, a rear caster wheel, a front arm to which the front caster wheel is attached, and an arm pivot that is located below a straight line drawn between the front caster wheel axis and the drive wheel axis.  *See* Hosino Figs. 1-2, 3:58-4:23 (Ex. 1005).  Hosino specifically states that it is preferable that the arm pivot be "positioned generally as high as a center $O_2$ of the front caster." *See id.* 4:18-23 (Ex. 1005).

*Mulhern '420* discloses a powered wheelchair having a pair of drive wheels, a pair of front anti-tip wheels, a pair of rear caster wheels, a pair of front arms to which the front anti-tip wheels are attached, and a pair of front arm pivots that are located below a straight line drawn between the front wheel axis and the drive wheel axis.  *See Mulhern '420* Fig. 1, ¶¶ [0022] (Ex. 1006).

*Harakawa* discloses a powered wheelchair with a pair of drive wheels, a pair of front caster wheels, a pair of rear caster wheels, a pair of front arms to which the front caster wheels are attached, and a pair of front arm pivots that are

located below a straight line drawn between the front wheel axis and the drive

wheel axis.  *See Harakawa* Fig. 1, Abstract (Ex. 1007).

## VIII.  IDENTIFICATION OF HOW THE CHALLENGED CLAIMS ARE UNPATENTABLE

Pursuant to Rule 42.104(b)(4)-(5), specific grounds identified below and

discussed in the Richter Declaration show in detail the prior art disclosures that

render the challenged claims unpatentable.

### A.    Independent Claim 1

Challenged claim 1 requires a wheelchair including: (a) a frame; (b) a drive

wheel defining a drive wheel axis, (c) a mounting plate pivotally coupled to the

frame at a pivot axis, the pivot axis being positioned forward of the drive wheel

axis; (d) a drive operatively coupled to the drive wheel and affixed to the mounting

plate; (e) a forward-extending front arm rigidly extending from the mounting plate

such that the mounting plate, drive, and front arm are together configured to pivot

about the pivot axis; (f) a front wheel rotatably coupled to the front arm, the front

wheel defining a front wheel axis, (g) wherein a vertical position of the pivot axis

with respect to the ground plane is spaced from and positioned relatively below a

line drawn between the drive wheel axis and the front wheel axis when the drive

wheels and front wheels are on level ground; and (h) whereby motor torque biases

18

the front wheel.  All of the features of claim 1 are shown in the prior art.  *See*

Richter Decl. ¶ 23 (Ex. 1008).

### 1.    Claim 1 is Unpatentable over Mulhern '715

As shown in the summary chart below and in the Richter Declaration, the

wheelchair of claim 1 is obvious in view of Mulhern '715.

Mulhern '715 discloses a wheelchair frame, as required by limitation 1(a).

Specifically, Mulhern '715 teaches a main structural frame 3.  *See, e.g.*, Mulhern

'715 ¶ [0033] (Ex. 1002).  Mulhern '715 also discloses a drive wheel defining a

drive wheel axis, as required by limitation 1(b).  Specifically, Mulhern '715

teaches a pair of drive wheels 6.  *See, e.g.*, Mulhern '715 ¶ [0033].  As is illustrated

by Mulhern '715, wheelchair frames and drive wheels were well known in the art.

*See* Richter Decl. ¶ 25 (Ex. 1008).

Mulhern '715 also discloses a mounting plate pivotally coupled to the frame

at a pivot axis, the pivot axis being positioned forward of the drive wheel axis, as

required by limitation 1(c).  Mulhern '715 teaches an upper mounting plate 58.

*See, e.g.*, Mulhern '715 ¶ [0038].  As can be seen in Figure 5, reproduced below,

mounting plate 58 is pivotally coupled to the frame 3 at pivot 8, and the pivot 8 is

positioned forward of the drive wheel axis $P_A$.  *See, e.g.*, Mulhern '715 Fig. 5, ¶

[0033] (Ex. 1002).  As Mulhern '715 illustrates, wheelchairs having mounting

plates pivotally coupled to the frame at a pivot axis that is positioned forward of the drive wheel axis were well known in the art. *See* Richter Decl. ¶ 26 (Ex. 1008).

Mulhern '715 further discloses a drive operatively coupled to the drive wheel and affixed to the mounting plate, as required by claim limitation 1(d). As can also be seen in Figure 5, Mulhern '715 teaches a drive-train assembly 7 that is affixed to mounting plate 58 and is operatively coupled to drive wheel 6 to power the drive wheel. *See, e.g.*, Mulhern '715 Fig. 5, ¶¶



**Mulhern '715, Figure 5 (Ex. 1002)**

[0033], [0037] (Ex. 1002). Thus, as Mulhern '715 demonstrates, wheelchairs with a drive affixed to a mounting plate and operatively coupled to a drive wheel were well known in the art. *See* Richter Decl. ¶ 27 (Ex. 1008).

Mulhern '715 also teaches a forward-extending front arm rigidly extending from the mounting plate such that the mounting plate, drive, and front arm are together configured to pivot about the pivot axis, as required by claim limitation 1(e). As illustrated in Figure 5 above, Mulhern '715 teaches a forward-extending front bracket 30 rigidly extending from the mounting plate 58: "[A] bracket 30 is

rigidly mounted to the drive-train assembly 7 and projects forwardly thereof." *See, e.g.*, Mulhern '715 Fig. 5, ¶ [0036] (Ex. 1002).  Mulhern '715 further teaches that the mounting plate 58, drive-train assembly 7, and front arm bracket 30 pivot together about the pivot axis 8: "[T]he drive-train assembly 7 rotates in a clockwise direction about pivot 8 ….

Rotation of the drive-train assembly 7 will cause the bracket 30 to rotate in the same clockwise direction …." *See, e.g.*, Mulhern '715 Fig. 4, ¶ [0038]  (Ex. 1002).  This is illustrated in Figure 4.  Wheelchairs having front arms rigidly extending from a mounting



**Mulhern '715, Figure 4 (Ex. 1002)**

plate such that the drive, plate, and front arm all pivot about the pivot axis were known in the art, as Mulhern '715 clearly shows.  *See* Richter Decl. ¶ 28 (Ex. 1008).

Mulhern '715 further discloses a front wheel rotatably coupled to the front arm, the front wheel defining a front wheel axis, as is required by claim limitation 1(f).  Mulhern '715 teaches a front anti-tip wheel 16 with a front wheel axis $16_A$ that is coupled to front arm bracket 30 through link 20 and suspension arm 24.

21

*See, e.g.*, Mulhern '715 Fig. 5, ¶ [0034] (Ex. 1002).  Wheelchairs having front wheels rotatably coupled to front arms were known in the art, as Mulhern '715 illustrates.  *See* Richter Decl. ¶ 29 (Ex. 1008).

Mulhern '715 also teaches a wheelchair where motor torque biases the front wheel, as is required by claim limitation 1(h).  Mulhern '715 discloses a front wheel 16 that raises in response to torque applied by the drive assembly 7: "Referring to FIG. 4, in an operational mode requiring increased torque output, such as may be required when accelerating or climbing a curb and/or obstacle, the drive-train assembly 7 rotates in a clockwise direction about pivot 8 ….  Rotation of the drive-train assembly 7 will cause the bracket 30 to rotate in the same clockwise direction, see arrow $R_{30}$, and the link 34 to move in a counterclockwise direction, see arrow $R_{34}$, about pivot 42.  … The link 34 rotates the suspension arm 24 in a clockwise direction about pivot $24_A$, denoted by arrow $R_{24}$, and lifts or raises the anti-tip wheel 16."  *See, e.g.*, Mulhern '715 Fig. 4, ¶ [0038] (Ex. 1002).  Wheelchairs where motor torque biases the front wheel were well known in the art, as Mulhern '715 shows.  *See* Richter Decl. ¶ 30 (Ex. 1008).

Mulhern '715 does not explicitly teach a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as is required by claim

22

limitation 1(g).  This limitation, however, would have been obvious to a person of ordinary skill in the art based on the disclosure in Mulhern '715.  *See* Richter Decl. ¶ 31(Ex. 1008).  Low pivot axes were known in the art, and others have stated the advantages of locating a pivot axis in a low position.  Hosino, for example, states that "it is particularly preferable that the bending portion 5 [pivot axis] is positioned generally as high as a center $O_2$ of the front caster" and that locating the pivot axis at a lower vertical location results in a larger upward vertical force component for the front caster wheel.[3]  *See* Hosino 4:21-23; 6:50-65 (Ex. 1005).

Further, the '343 patent itself acknowledges that "low pivots may have been disfavored because of the need for clearance over the ground," suggesting that low pivot axes were in fact already known in the art.  *See* '343 patent 11:59-64 (Ex. 1001).  As Dr. Richter explains in his declaration, the precise location of the pivot axis would have been a routine design choice that a person of ordinary skill in the art would have made during the normal course of designing a wheelchair.  The placement of the pivot axis below a line connecting the front wheel axis and the drive wheel axis would have yielded predictable results.  *See* Richter Decl. ¶ 32 (Ex. 1008).

In addition, Mulhern '715 teaches a second pivot point $24_A$ that is located below a line connecting the front wheel axis and the drive wheel axis, to which

---

[3] See Section VIII.A.2.a), *infra*, for a complete discussion of Hosino.

suspension arm 24 is attached. *See, e.g.*, Mulhern '715 Figs. 4, 5, ¶ [0034] (Ex. 1002). It would have been obvious for a person of skill in the art to locate the first pivot 8 at the location of second pivot 24A, *i.e.*, below a line connecting the front wheel axis and the drive wheel axis. A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art. Further, as just explained, others have stated that locating a pivot axis in a relatively low position is preferred and makes it easier for the front wheels to overcome obstacles. *See, e.g.*, Hosino 4:21-23; 6:50-65 (Ex. 1005). Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results. *See* Richter Decl. ¶ 33 (Ex. 1008).

### 2. Claim 1 is Unpatentable over Mulhern '715 in View of Any One of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 1 is obvious in view of Mulhern '715 combined with any of the Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

As explained *supra* in Section VIII.A.1, Mulhern '715 discloses all of the limitations of claim 1 except for a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn

24

between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as is required by claim limitation 1(g). The Patent Owner may argue that Mulhern '715 lacks a specific disclosure of a below-the-line pivot axis limitation. As discussed below, the Low Pivot References render obvious this claim limitation. *See* Richter Decl. ¶¶ 34-35 (Ex. 1008).

### a)   Claim 1 is Obvious over Mulhern '715 in View of Hosino

Claim 1 is obvious over Mulhern '715 in view of Hosino. Hosino discloses a wheelchair with a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as claim limitation 1(g) requires. Hosino discloses a wheelchair 1 with a loop frame 2 having a caster wheel 3a on the front end of the frame and a caster wheel 3b on the rear end of the frame, as well as two large driving wheels 4. *See, e.g.*, Hosino 3:35-41 (Ex. 1005). The loop frame 2 has a bendable portion 5, which allows the side frame to bend upward or downwards. *See id.* 3:41-45 (Ex. 1005). "The front half-frame 2a has a pair of rear end portions furcating like a two-prong fork in which the respective front end portion of the rear half-frame 2b is connected by means of a pivot or any other suitable method so as to form the bendable portion 5 which is allowed to bend upwardly and

downwardly." *Id.* 3:66-4:5 (Ex. 1005).  Figure 2, reproduced below, shows the

loop frame 2 with pivot point 5.



**Hosino, Figure 2 (Ex. 1005)**

As can be seen from Figure 2 above, pivot point 5 is positioned below a line

drawn between the axis of caster wheel 3a and drive wheel axis 7.  Hosino also

describes the bendable portion 5 as "located in a relatively low position" and

further states that "it is particularly preferable that the bending portion 5 is

positioned generally as high as a center $O_2$ of the front caster."  *See id.* 4:14-15, 21-

23 (Ex. 1005).

Hosino further provides a reason for locating the front arm pivot point at a

relatively low position:

As FIG. 11 and FIG. 12 show, when the front caster 3a is pressed against the projection 18, the front caster receives a pressing force $f_1$ which works parallel to a line $O_1O_2$ connecting the rotation center $O_1$ of the front-half frame 2a and the rotation center $O_2$ of the front caster. The pressing force $f_1$ can be divided into a component $f_2$ parallel to a line $O_2N$ connecting the center $O_2$ of the front caster and a point N of contact to the projection, and a component $f_3$ vertical to the same. Only the component $f_3$ vertical to the line $O_2N$ is effective for the front caster 3a to ride over the projection.  In the structure according to the FIG. 11, the rotation center $O_1$ of the front-half frame is positioned lower than the rotation axis 7 of the driving wheel, such that the vertical component $f_3$ in FIG. 11 is larger than that in FIG. 12, such that a load for running over the projection getting smaller in the former case.

*See id.* 6:50-65 (Ex. 1005).  Figures 11 and 12 are reproduced below:



**Hosino, Figure 11 (Ex. 1005)**

27



**Hosino, Figure 12 (Ex. 1005)**

Hosino discloses a wheelchair with an arm pivot axis that is below the line connecting the front wheel axis and the drive wheel axis when the wheels are on the ground, as claim limitation 1(g) requires.  *See* Richter Decl. ¶ 39 (Ex. 1008). Thus, Hosino discloses an arm pivot axis with a vertical position that meets claim limitation 1(g).  Together, Mulhern '715 and Hosino disclose all the elements of claim 1.  Mulhern '715 discloses a powered wheelchair with a mounting plate pivotally coupled to the frame at a pivot axis, a drive affixed to the mounting plate, a forwardly-extending front arm, and a front wheel rotatably coupled to the front arm, whereby motor torque lifts the front wheel.  Hosino discloses a powered

28

wheelchair with a front wheel and a front arm that pivots around a pivot point that is below a line drawn between the axis of the front caster wheel and the axis of the drive wheel.

It would have been obvious for one of ordinary skill in the art to position the pivot axis of the front arm in the Mulhern '420 wheelchair below a line connecting the front wheel axis and the drive wheel axis.  A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line, or below the line – and choosing one of these three options in the course of designing a wheelchair would be a routine design choice to a person of ordinary skill in the art.  Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results.  *See* Richter Decl. ¶ 40 (Ex. 1008).

### b)   Claim 1 is Obvious over Mulhern '715 in View of Mulhern '420

Claim 1 is obvious over Mulhern '715 in view of Mulhern '420.[4]  Mulhern '420 discloses a powered wheelchair with front anti-tip wheels.  *See* Mulhern '420 Abstract (Ex. 1006).  Mulhern '420 discloses a wheelchair with a vertical position of the pivot axis with respect to the ground plane that is spaced from and

---

[4] Mulhern '420 differs from Hosino and Harakawa in that there is a relatively more complete illustration of the motor and drive assembly in Mulhern '420.

positioned relatively below a line drawn between the drive wheel axis and the front

wheel axis when the drive wheels and front wheels are on level ground, as claim

limitation 1(g) requires.  As shown in Figure 1, Mulhern '420 discloses a

wheelchair 10 having a forwardly extending arm 24 that is pivotally connected to

frame 60 by a bolt 32, and

a wheel 22 that is

connected to the front arm

24, where the pivot point

is located below a line

drawn between the axis of

the front wheel 22 and the

axis of main drive wheel

62.  *See id.* ¶ [0022], Fig.

2 (Ex. 1006).



FIG. 1

**Mulhern '420, Figure 1 (Ex. 1006)**

Mulhern '420 further explains that front wheel 22 can be lowered to the

ground: "Anti-tip wheels assembly 20 further comprises a mechanism for lowering

arm 24 and wheel 22. … In this embodiment, the lowering mechanism is capable

of holding wheel 22 in a near ground position ….  As used herein, near ground

position is understood to include a ground engaging position wherein the wheel 22

is in contact with the ground."  *See id.* ¶ [0024] (Ex. 1006).  A person of skill in the

art would understand that when the front wheel depicted in Figure 1 is lowered to the ground, the front arm pivot point would remain below a line drawn between the front wheel axis and the drive wheel axis.  *See* Richter Decl. ¶ 42 (Ex. 1008).

Mulhern '420 discloses a wheelchair with an arm pivot axis that is below the line connecting the front wheel axis and the drive wheel axis when the wheels are on the ground, as claim limitation 1(g) requires.  *See* Richter Decl. ¶ 43 (Ex. 1008).  Thus, Mulhern '420 discloses an arm pivot axis with a vertical position that meets claim limitation 1(g).  Together, Mulhern '715 and Mulhern '420 disclose all the elements of claim 1.  Mulhern '715 discloses a powered wheelchair with a mounting plate pivotally coupled to the frame at a pivot axis, a drive affixed to the mounting plate, a forwardly-extending front arm, and a front wheel rotatably coupled to the front arm, whereby motor torque lifts the front wheel.  Mulhern '420 discloses a powered wheelchair with a front anti-tip wheel and a front arm that pivots around a pivot point that is below a line drawn between the axis of the front wheel and the axis of the drive wheel.

It would have been obvious for one of ordinary skill in the art to position the pivot axis of the front arm in the Mulhern '715 wheelchair below a line connecting the front wheel axis and the drive wheel axis as is taught by Mulhern '420.  A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line,

or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art.  Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results.  *See* Richter Decl. ¶ 44 (Ex. 1008).

### c)      Claim 1 is Obvious over Mulhern '715 in View of Harakawa

Claim 1 is obvious over Mulhern '715 in view of Harakawa.[5]  Harakawa discloses a wheelchair with a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as claim limitation 1(g) requires.  As shown in Figure 1, Harakawa teaches a wheelchair 1 having a front arm 5 that is pivotally connected to frame 7a at pivot point 6, and a front caster wheel 14 that is connected to the front



**Harakawa, Figure 1 (Ex. 1007)**

---

[5] Harakawa differs from Mulhern '420 in that there is an illustration in Harakawa of a low pivot axis with a front caster wheel.

arm 5, where the pivot point is located below a line drawn between the axis of the front wheel 14 and the axis 12 of main drive wheel 13. *See id.* Fig. 1 (Ex. 1007).

Harakawa discloses a wheelchair with a pivot axis that is below the line connecting the front wheel axis and the drive wheel axis when the wheels are on the ground, as claim limitation 1(g) requires. *See* Richter Decl. ¶ 46 (Ex. 1008). Thus, Harakawa discloses an arm pivot axis with a vertical position that meets claim limitation 1(g). Together, Mulhern '715 and Harakawa disclose all the elements of claim 1. Mulhern '715 discloses a powered wheelchair with a mounting plate pivotally coupled to the frame at a pivot axis, a drive affixed to the mounting plate, a forwardly-extending front arm, and a front wheel rotatably coupled to the front arm, whereby motor torque lifts the front wheel. Harakawa discloses a powered wheelchair with a front wheel and a front arm that pivots around a pivot point that is below a line drawn between the axis of the front wheel and the axis of the drive wheel.

It would have been obvious for one of ordinary skill in the art to position the pivot axis of the Mulhern '715 wheelchair below a line connecting the front wheel axis and the drive wheel axis, as is taught in Harakawa. A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of

ordinary skill in the art.  Doing so would be nothing more than a combination of

known elements used for their known purpose and yielding predictable results.  *See*

Richter Decl. ¶ 47 (Ex. 1008).

### 3.  Claim 1 is Unpatentable over Goertzen in View of Any of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the

wheelchair of claim 1 is obvious in view of Goertzen combined with any of the

Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

Goertzen discloses a wheelchair frame, as required by limitation 1(a).

Goertzen teaches a wheelchair 100 with a chair 120 that is adjustably mounted to

frame 142.  Goertzen p. 5, ll. 21-24 (Ex. 1003).  Goertzen also teaches, "Springs

144 and 146 are coupled to the arms 132 and 134 and the frame 142."  *Id.* p. 6, l.

16 (Ex. 1003).  Goertzen also discloses a drive wheel defining a drive wheel axis,

as required by limitation 1(b): "The wheelchair 100 has a pair of drive wheels 102

and 104."  *See id.*, p. 5, ll. 13-14 (Ex. 1003).  As is illustrated by Goertzen,

wheelchair frames and drive wheels were well known in the art.  *See* Richter Decl.

¶ 49 (Ex. 1008).

Goertzen further discloses a mounting plate pivotally coupled to the frame at a pivot axis, the pivot axis being positioned forward of the drive wheel axis, as required by limitation 1(c). As shown in Figure 3, Goertzen teaches a mounting plate 308 that is pivotally mounted to the wheelchair frame 142 through a pivot mounting structure that includes brackets 310 and



**Goertzen, Figure 3 (partially reproduced) (Ex. 1003)**

312, sleeve 314, and pin 330.  *See id.*, Fig. 3, p. 6, ll. 4-6 (Ex. 1003).  Figure 4A, also shown below, shows the pivot axis P positioned forward of the drive wheel axis.  *See id.*, Fig. 4A (Ex. 1003).  Wheelchairs with mounting plates pivotally coupled to the frame were known in the art.  *See* Richter Decl. ¶ 50 (Ex. 1008).

Goertzen also teaches a drive operatively coupled to the drive wheel and affixed to the mounting plate, as required by claim limitation 1(d).  "A pair of drive motors 136 and 138 and gearboxes are used to power drive wheels 102 and 104." *See id.* p. 6, ll. 4-5 (Ex. 1003).  "Base member 306 has attached thereto a mounting

35

plate 308 for mounting drive motor 136 and gearbox assembly 309." *See id.* p. 7, ll. 6-8 (Ex. 1003). As Goertzen illustrates, wheelchairs with drives coupled to the drive wheels and affixed to a mounting plate were also known in the art. *See* Richter Decl. ¶ 51 (Ex. 1008).

Goertzen further discloses a forward-extending front arm rigidly extending from the mounting plate such that the mounting plate, drive, and front arm are together configured to pivot about the pivot axis, as required by claim limitation 1(e). As can be seen in Figure 4A, shown below, the Goertzen wheelchair has a forward-extending front arm 132 rigidly extending from the mounting plate 308: "Drive motor 136 is coupled to pivot arm 132 through gearbox assembly 309 and mounting plate 308." *See id.* Fig. 4A, p. 7, ll. 8-9 (Ex. 1003). Further, as can be seen in Figure 5B, shown below, Goertzen teaches a wheelchair where the mounting plate 308, drive 136, and front arm 132 pivot about the pivot axis P. *See, e.g.*, *id.* Fig. 5B, p. 10, ll. 11-24 (Ex. 1003). As Goertzen illustrates, wheelchairs with front arms rigidly extending from a mounting plate such that the drive, mounting plate, and front arm pivot about a pivot axis were known in the art. *See* Richter Decl. ¶ 52 (Ex. 1008).



**Goertzen, Figures 4A and 5B (Ex. 1003)**

Goertzen also teaches a front wheel rotatably coupled to the front arm, the front wheel defining a front wheel axis, as required by claim limitation 1(f). Figure 4A, reproduced above, shows a front caster wheel 106 coupled to the front arm. *See, e.g.*, *id.* Fig. 4A, p. 6, l. 11 (Ex. 1003). Wheelchairs with front wheels rotatably coupled to a front arm were known in the art. *See* Richter Decl. ¶ 53 (Ex. 1008).

Goertzen also discloses motor torque that biases the front wheel, as required by claim limitation 1(h). Goertzen teaches, "Nevertheless, in Figure 5B from preferably a standstill position, drive motors 136 and 138 are 'torqued' so as to cause pivot arms 132 and 134 to pivot about, for example, pin or bolt 440 and raise front casters 106 and 108 off the ground. … As shown in Figure 5B and described in connection with Figures 4A-4C, such 'torquing' causes pivot arms 132 and 134 to pivot about pin 330 thereby causing front casters 106 and 108 to rise." *See id.*,

37

U.S. Patent 8,408,343

Petition for *Inter Partes* Review

p. 10, ll. 11-22 (Ex. 1003).  Figure 5B, reproduced above, shows the front arm 132 pivoted around pivot point 330, causing front caster 106 to raise vertically off the ground.  As Goertzen illustrates, wheelchairs where motor torque biases the front wheel were known in the art.  *See* Richter Decl. ¶ 54 (Ex. 1008).

Goertzen, however, does not disclose a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as is required by claim limitation 1(g).  As discussed above in Sections VIII.A.2.a)-VIII.A.2.c), the Low Pivot References disclose or render obvious a pivot axis that is below the line connecting the drive wheel axis and the caster wheel axis.  *See* Richter Decl. ¶ 55 (Ex. 1008).

It would have been obvious for one of ordinary skill in the art to position the pivot axis in the Goertzen wheelchair below a line connecting the front wheel axis and the drive wheel axis.  A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art.  Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results.  *See* Richter Decl. ¶ 56 (Ex.

1008).  Therefore, claim 1 is unpatentable over Goertzen in view of any one of the Low Pivot References.

### 4.    Claim 1 Is Unpatentable over Fought in View of Any of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 1 is obvious in view of Fought combined with any of the Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

Fought discloses a wheelchair frame, as required by limitation 1(a). Specifically, Fought teaches a wheelchair 100 having a frame 206.  *See, e.g.*, Fought Fig. 2, ¶ [0021] (Ex. 1004).  Fought also discloses a drive wheel defining a drive wheel axis, as required by limitation 1(b).  Specifically, Fought teaches a wheelchair 100 having drive wheels 104 and 106.  *See, e.g.*, *id.* Fig. 2, ¶ [0021] (Ex. 1004).  As is illustrated by Fought, wheelchair frames and drive wheels were known in the art.  *See* Richter Decl. ¶ 58 (Ex. 1008).

Fought further discloses a mounting plate pivotally coupled to the frame at a pivot axis, the pivot axis being positioned forward of the drive wheel axis, as required by limitation 1(c).  Fought specifically teaches a pivotal mounting bracket 318, describing it as "a U-shaped bracket having spaced apart longitudinal members 319 joined by a mid-section at one of their ends."  *See, e.g.*, Fought p. 2, ¶ [0024], Fig. 3 (Ex. 1004).  Fought further teaches that "[t]his entire assembly is

then pivotally secured with a pin or bolt 334 that passes through the mounting

bracket 303, drive

assembly 202 bracket

318, and pivot arm

208 mounting tube

310." *See, e.g., id.* ¶

[0026], Fig. 3 (Ex.

1004).  Figure 4A,

reproduced below,

shows the mounting



**Fig. 4A**
**Fought, Figure 4A (Ex. 1004)**

bracket 318 connected to the frame at pivot point P, and further shows that the

pivot P is positioned forward of the drive wheel axis.  Wheelchairs having

mounting plates pivotally coupled to the frame at a pivot axis positioned forward

of the drive wheel axis were known in the art, as exemplified by Fought.  *See*

Richter Decl. ¶ 59 (Ex. 1008).

Fought also teaches a drive operatively coupled to the drive wheel and

affixed to the mounting plate, as required by claim limitation 1(d).  Fought

specifically states, "Drive assembly 202 preferably has a motor-gearbox sub-

assembly for driving one of the drive wheels and a pivotal mounting bracket 318.

… Pivotal mounting bracket 318 is in the form of a U-shaped bracket having

40

spaced apart longitudinal members 319 joined by a mid-section at one of their

ends.  The mid-section is preferably used for mechanically attaching the

motor/gearbox sub-assembly." *See, e.g.*, Fought ¶ [0024], Fig. 3 (Ex. 1004).

Figure 4A, reproduced above, shows drive assembly 202 affixed to mounting

bracket 318.  As Fought clearly demonstrates, wheelchairs having a drive

operatively coupled to a drive wheel and affixed to a mounting plate were known

in the art.  *See* Richter Decl. ¶ 60 (Ex. 1008).

Fought further discloses a forward-extending front arm rigidly extending

from the mounting plate such that the mounting plate, drive, and front arm are

together configured to pivot about the pivot axis, as required by claim limitation

1(e).  Fought teaches that front pivot arm 208 and drive assembly 202 are rigidly

coupled and that they pivot together: "[T]he drive assembly 202 and the pivot arm

208 are rigidly coupled together.  That is, the drive assembly 202 does not pivot

independently of pivot arm 208." *See, e.g.*, Fought ¶ [0031], Fig. 7 (Ex. 1004).

The drive assembly 202 and pivot arm 208 are affixed to one another through

pivotal mounting bracket 318 and pivot arm engagement interface 314 using a

permanently welded or fastened pin 702, and pivot arm 208 forwardly extends

from the mounting bracket 318.  *See, e.g.*, *id.* (Ex. 1004).  As Fought illustrates,

wheelchairs having a forward-extending front arm rigidly extending from a

mounting plate such that the plate, drive, and arm pivot together were known in the art. *See* Richter Decl. ¶ 61 (Ex. 1008).

Again, as discussed *supra* in Section VI.C, during prosecution of the '343 patent, the Examiner allowed the claims based on an error regarding the Fought reference. After rejecting the pending claims as obvious over Fought in view of Harakawa, the Examiner agreed with the Patent Owner that Fought did not disclose a front arm that rigidly extended from the mounting plate. *See* '343 Patent File History, 1/22/2013 Applicant-Initiated Interview Summary (Ex. 1009). Fought, however, *does* teach a front arm that rigidly extends from a mounting plate—the second embodiment disclosed in Fought "differs from the first in that the drive assembly 202 and the pivot arm 208 are ***rigidly coupled together***. That is, the drive assembly 202 ***does not pivot independently*** of pivot arm 208." *See* Fought ¶ [0031], (Ex. 1004) (emphases added). The very limitation added to the claims to distinguish Fought during prosecution is explicitly disclosed in Fought, and thus Fought does teach this limitation of claim 1. Notably, the Patent Owner did not argue that Fought did not disclose any other limitations of claim 1.

Fought also teaches a front wheel rotatably coupled to the front arm, the front wheel defining a front wheel axis, as required by claim limitation 1(f). Figure 4A, reproduced above, shows a front caster wheel 108 rotatably coupled to the pivot arm 208. *See, e.g.*, Fought Fig. 4A, ¶ [0023] (Ex. 1004). Wheelchairs

with front wheels rotatably coupled to a front arm were known in the art.  *See* Richter Decl. ¶ 62 (Ex. 1008).

Fought also discloses motor torque that biases the front wheel, as required by claim limitation 1(h).  "Illustrated in FIG. 5 is an elevational view of the suspension of wheelchair 100 traversing over an obstacle 500 by ascending the obstacle.  This operating condition is accomplished by either rapidly accelerating wheelchair 100 in the forward direction or directly driving front caster 108 over obstacle 500.  … This causes drive assembly 202 to pivot counter-closkwise around pivot P.  … Hence, engagement interfaces 314 and 324 translate the pivotal motion of drive assembly 202 to pivot arm 208 to thereby raise front caster 108 to traverse obstacle 500."  *See, e.g.*, Fought ¶ [0029], Fig. 5 (Ex. 1004).  As Fought illustrates, wheelchairs where motor torque biases the front wheel were known in the art.  *See* Richter Decl. ¶ 63 (Ex. 1008).

Fought, however, does not disclose a vertical position of the pivot axis with respect to the ground plane that is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, as is required by claim limitation 1(g).  As discussed above in Sections VIII.A.2.a)-VIII.A.2.c), the Low Pivot References render obvious a pivot axis that is below the line connecting the drive wheel axis and the caster wheel axis.  *See* Richter Decl. ¶ 64 (Ex. 1008).

It would have been obvious for one of ordinary skill in the art to position the pivot axis in the Fought wheelchair below a line connecting the front wheel axis and the drive wheel axis. A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art. Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results. *See* Richter Decl. ¶ 65 (Ex. 1008). In fact, during prosecution of the '343 patent, the Examiner agreed that "[i]t would have been obvious to one of ordinary skill in the art at the time of the invention to modify Fought by further locating the pivot axis as disclosed by Harakawa in order to ensure the comfort of riding on a wheel chair. *See* '343 Patent File History, 12/26/2012 Non-Final Rejection at 3 (Ex. 1011). Therefore, claim 1 is unpatentable over Fought in view of any one of the Low Pivot References.

In summary, the chart below identifies where the above prior art references disclose and/or make obvious the limitations of claim 1 of the '343 patent.

| **Claim 1**: A wheelchair comprising: | *See, e.g.*, Mulhern '715 abstract, Fig. 2 (Ex. 1002); Goertzen abstract, cl. 1, Fig. 1, 2:4-5, 5:12-15 (Ex. 1003); Fought ¶ [0021]; Fig. 1 (Ex. 1004); Hosino abstract, 1:50-55, Fig. 1 (Ex. 1005); Mulhern '420 abstract, Fig. 1 (Ex. 1006); |
|---|---|

| | Harakawa abstract; ¶¶ [0001], [0011]; Fig. 1 (Ex. 1007). |
|---|---|
| **(a) a frame;** | *See, e.g.*, Mulhern '715 abstract; ¶¶ [0009], [0033], [0043], Figs. 2, 6 (Ex. 1002); Goertzen p. 2, ll. 15-17, 26-28; p. 5, ll. 21-24; p.6, ll. 13-20; p. 12, l. 30-p. 13, l. 2 (Ex. 1003); Fought abstract; ¶¶ [0007],[0021]; Fig. 2 (Ex. 1004); Hosino 5:18-35, Fig. 1 (Ex. 1005); Mulhern '420 abstract, ¶ [0019] (Ex. 1006); Harakawa abstract; ¶¶ [0001];  [0011], [0016], Fig. 1 (Ex. 1007). |
| **(b) a drive wheel defining a drive wheel axis;** | *See, e.g.*, Mulhern '715 ¶¶ [0033], [0035], Figs. 2, 6 (Ex. 1002); Goertzen p. 2, ll. 21-22, p. 3, ll. 22-27, p. 5, ll. 13-14, p. 12, ll. 22-23, p. 13, ll. 3-7, 10-12, Figs. 1, 3 (Ex. 1003); Fought ¶¶ [0020]-[0021], [0024]; Figs. 1, 2 (Ex. 1004); Hosino abstract; 3:39-41; 7:25-26; Figs. 1, 13, 14 (Ex. 1005); Mulhern '420 ¶¶ [0020], [0051], Fig. 1 (Ex. 1006); Harakawa ¶ [0017]; Fig. 1 (Ex. 1007). |
| **(c) a mounting plate pivotally coupled to the frame at a pivot axis, the pivot axis being positioned forward of the drive wheel axis;** | *See, e.g.*, Mulhern '715 ¶¶ [0037]-[0038], [0044]-[0045], Figs. 5, 8 (Ex. 1002); Goertzen p. 7, ll. 5-12, p. 14, ll. 9-15, Figs. 3, 4A, 9A, 10A (Ex. 1003); Fought ¶¶ [0024]-[0026]; Figs. 2, 3, 4A (Ex. 1004). |
| **(d) a drive operatively coupled to the drive wheel and affixed to the mounting plate;** | *See, e.g.*, Mulhern '715 ¶¶ [0033], [0037], Figs. 2-8,  (Ex. 1002); Goertzen p. 2, ll. 21-22, p. 6, ll. 4-6; p. 7, ll. 6-12; p. 13, ll. 11-2; p. 14, ll. 9-15, Figs. 3, 9A (Ex. 1003); Fought ¶ [0024]; Figs. 3, 4A (Ex. 1004). |
| **(e) a forward-extending front arm rigidly extending from the mounting plate such that the mounting plate, drive, and front arm are together configured to pivot about the pivot axis;** | *See, e.g.*, Mulhern '715 ¶¶ [0036], [0038], [0040], Figs. 2-5 (Ex. 1002); Goertzen p. 2, ll. 17-19, p. 7, ll. 4-9; p. 10, ll. 11-24; Figs. 3, 4A, 5B  (Ex. 1003); Fought ¶¶ [0019], [0021], [0031]-[0032]; Fig. 7 (Ex. 1004). |

| | |
|---|---|
| **(f) a front wheel rotatably coupled to the front arm, the front wheel defining a front wheel axis,** | *See, e.g.*, Mulhern '715 ¶¶ [0034], [0036], Figs. 2-5 (Ex. 1002); Goertzen p. 2, ll. 19-20; p. 6, l. 11; p. 13, l. 19; Figs. 3, 9A (Ex. 1003); Fought ¶¶ [0020]-[0021], Fig. 4A (Ex. 1004); Hosino 3:58-4:23; 6:50-7:9; Figs. 1-7, 9, 11 (Ex. 1005); Mulhern '420 ¶¶ [0022]-[0026]; Figs. 1-3 (Ex. 1006); Harakawa abstract; ¶¶ [0016]-[0017], Fig. 1 (Ex. 1007). |
| **(g) wherein a vertical position of the pivot axis with respect to the ground plane is spaced from and positioned relatively below a line drawn between the drive wheel axis and the front wheel axis when the drive wheels and front wheels are on level ground, and** | Hosino 3:58-4:23; 6:50-7:9; Figs. 1-7, 9, 11 (Ex. 1005); Mulhern '420 ¶¶ [0022]-[0026]; Figs. 1-3 (Ex. 1006); Harakawa abstract; ¶¶ [0016]-[0017], Fig. 1 (Ex. 1007). |
| **(h) whereby motor torque biases the front wheel** | *See, e.g.*, Mulhern '715 ¶¶ [0038], [0040], Fig. 4 (Ex. 1002); Goertzen p. 2, ll. 22-25, p. 3, ll. 7-14, p. 8, l. 23 – p. 9, l. 8, p. 9, ll. 14-16; p. 10, ll. 11-24, p. 16, ll. 11-26, p. 18, ll. 1-14; Figs. 5B, 11B (Ex. 1003); Fought ¶¶ [0019], [0029], [0032]; Figs. 5, 8 (Ex. 1004); Hosino 6:44-49, Fig. 9 (Ex. 1005). |

## B.    The Dependent Claims Are Unpatentable

Each of the dependent claims discussed below is directed to subsidiary features of the claimed wheelchair, and it would be obvious to add their respective limitations to the independent claims.

    **1.**    **Claim 2 is Unpatentable over Mulhern '715 in View of Hosino, Goertzen in View of Hosino, or Fought in View of Hosino**

Claim 2 depends from independent claim 1, which as discussed *supra* is unpatentable.  Claim 2 is obvious over Mulhern '715 in view of Hosino, Goertzen in view of Hosino, or Fought in view of Hosino.

Claim 2 recites a forward-extending front arm that is void of a biasing member that is configured to provide a downward force on the forward-extending front arm.  Hosino teaches a wheelchair having a forward-extending front arm 2 that does not have a biasing member acting on it.  *See, e.g.*, Hosino Fig. 1 (Ex. 1005).

Because wheelchairs with a forward-extending front arm that is void of a biasing member that is configured to provide a downward force on the arm were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claim 1.  This amounts to a routine design choice that would have yielded predictable results.  *See* Richter Decl. ¶ 70 (Ex. 1008).  Accordingly, claim 2 is not patentable.

| | |
|---|---|
| **Claim 2: The wheelchair of claim 1, wherein the forward-extending front arm is void of a biasing member that is configured to provide a downward force on the forward-extending front arm.** | *See, e.g.*, Hosino Fig. 1 (Ex. 1005). |

### 2. Claim 3 is Unpatentable over Mulhern '715 in View of Hosino, Goertzen in View of Hosino, or Fought in View of Hosino

Claim 3 depends from independent claim 1, which as discussed *supra* is unpatentable. Claim 3 is obvious over Mulhern '715 in view of Hosino, Goertzen in view of Hosino, or Fought in view of Hosino.

Claim 3 recites a centerline of a pivot axis that has a vertical height that is approximately less than a vertical height of the front wheel axis when the drive wheel and front wheel are on level ground. Hosino teaches this element: "[T]he present invention proposes … a traveling device in which each bendable portion is located beneath the rotation axis of the driving wheel and as high as a rotation center of the front caster." *See, e,g.*, Hosino 2:38-44 (Ex. 1005). "[I]t is particularly preferable that the bending portion 5 is positioned generally as high as a center $O_2$ of the front caster." *See, e.g.*, *id.* 4:21-23 (Ex. 1005).

Because wheelchairs with a pivot axis that were as high as (and thus sometimes lower) than the vertical height of the front wheel axis were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claim 1. This amounts to a routine design choice from a limited number of possible design options that would have yielded predictable results. *See* Richter Decl. ¶ 73 (Ex. 1008). Accordingly, claim 3 is not patentable.

48

| | |
|---|---|
| **Claim 3: The wheelchair of claim 1, wherein a centerline of the pivot axis has a vertical height that is approximately less than a vertical height of the front wheel axis when the drive wheel and front wheel are on level ground.** | *See, e.g.*, Hosino 2:38-44; 4:21-23; claim 4; Fig. 11 (Ex. 1005). |

### 3. Claim 4 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in View of Any of the Low Pivot References, or Fought in View of Any One of the Low Pivot References

Claim 4 depends from independent claim 1, which as discussed *supra* is unpatentable. Claim 4 is obvious over Mulhern '715 in view of any of the Low Pivot References, Goertzen in view of any of the Low Pivot References, or Fought in view of any one of the Low Pivot References.

Claim 4 recites a front wheel that is a caster such that the caster is in contact with a support surface while the wheelchair is at rest. Mulhern '715 teaches this limitation: "The anti-tip wheel 116 as illustrated in this figure [FIG. 6] is a caster type wheel and, as shown, is normally in contact with the ground $G_P$. A bi-directional spring strut 88 biases the anti-tip system to a resting position." *See, e,g.*, Mulhern '715 ¶ [0042], Fig. 6 (Ex.1002).

Goertzen also teaches this limitation. Figure 4A (reproduced above), which shows the wheelchair when it is at rest, shows front caster wheels 106 and 108 resting on the ground. *See* Goertzen Fig. 4A, p. 7, l. 27-p. 8, l. 9 (Ex.1003).

49

Fought teaches this limitation as well: "Referring now to FIGS. 4A and 4B, an elevational view of the suspension of wheelchair 100 under static conditions (i.e., no acceleration or deceleration) is shown.  In this regard, all of the caster and drive wheels are in contact with the wheelchair supporting or driving surface." *See, e.g.*, Fought ¶ [0027], Fig. 4A (Ex. 1004).

Hosino and Harakawa also teach this limitation.  *See, e.g.*, Hosino Fig. 2 (Ex. 1005); Harakawa Fig. 1 (Ex. 1007).

Because wheelchairs with a front caster wheel that is in contact with a support surface while the wheelchair is at rest were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claim 1.  This amounts to a routine design choice that would have yielded predictable results.  *See* Richter Decl. ¶ 78 (Ex. 1008).  Accordingly, claim 4 is not patentable.

| Claim 4: The wheelchair of claim 1, wherein the front wheel is a castor such that the castor is in contact with a support surface while the wheelchair is at rest. | *See, e.g*, Mulhern '715 ¶ [0042], Fig. 6 (Ex. 1002); Goertzen p. 7, l. 27-p. 8, l. 9; p. 15, ll. 16-28; Figs. 4A, 9A (Ex. 1003); Fought ¶ [0027]; Fig. 4A (Ex. 1004); Hosino Fig. 2 (Ex. 1005) ; Harakawa Fig. 1 (Ex. 1007). |
|---|---|

### 4.  Claim 5 is Unpatentable over Goertzen in View of Any of the Low Pivot References

Claim 5 depends from independent claim 1, which as discussed *supra* is

unpatentable.  Claim 5 is obvious over Goertzen in view of any of the Low Pivot

References.

Claim 5 recites a drive that is oriented substantially transverse to the

direction of wheelchair translation.  One skilled in the art would understand that "transverse to the direction of wheelchair translation" means perpendicular to (across) the direction of wheelchair



**Goertzen, Figure 9A (partially reproduced) (line and arrow added) (Ex. 1003)**

motion.  To determine this, one of skill in the art would look at the direction of

wheelchair motion and measure an approximately 90 degree angle from this

direction of motion.  Goertzen teaches a wheelchair with this limitation.  Figure 9A

shows drive motor 736 oriented transverse (solid line) to the direction of

wheelchair translation (dashed arrow).  *See* Goertzen Fig. 9A, p. 13, ll. 11-18 (Ex.

1003).

51

Because wheelchairs with a drive that is oriented substantially transverse to the direction of wheelchair translation were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claim 1.  This amounts to a routine design choice that would have yielded predictable results.  *See* Richter Decl. ¶ 81 (Ex. 1008).  Accordingly, claim 5 is not patentable.

| | |
|---|---|
| **Claim 5: The wheelchair of claim 1, wherein the drive that is oriented substantially transverse to the direction of wheelchair translation.** | *See, e.g.*, Goertzen p. 13, ll. 11-18; Fig. 9A (Ex. 1003). |

### 5.   Claim 6 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in View of Any of the Low Pivot References, or Fought in View of Any of the Low Pivot References

Claim 6 depends from independent claim 1, which as discussed *supra* is unpatentable.  Claim 6 is obvious over Mulhern '715 in view of any of the Low Pivot References, Goertzen in view of any of the Low Pivot References, or Fought in view of any of the Low Pivot References.

Claim 6 recites a wheelchair wherein the front arm and the drive are pivotable relative to the frame about a single pivot axis.  As explained *supra* in Sections VIII.A.1-VIII.A.4, Mulhern '715, Goertzen, and Fought all teach a wheelchair wherein the front arm and the drive are pivotable relative to the frame about a single pivot axis.

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

Because wheelchairs with a front arm and a drive that are pivotable relative to the frame about a single pivot axis were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claim 1.  This amounts to a routine design choice that would have yielded predictable results.  *See* Richter Decl. ¶ 84 (Ex. 1008).  Accordingly, claim 6 is not patentable.

| Claim 6: The wheelchair of claim 1, wherein the front arm and the drive are pivotable relative to the frame about a single pivot axis. | *See, e.g.*, Mulhern '715 ¶¶ [0036], [0038], [0040], Figs. 2-5 (Ex. 1002); Goertzen p. 2, ll. 17-19, p. 7, ll. 4-9; p. 10, ll. 11-24; Figs. 3, 4A, 5B  (Ex. 1003); Fought ¶¶ [0019], [0021], [0031]-[0032]; Fig. 7 (Ex. 1004). |
|---|---|

### 6.    Claim 7 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, or Goertzen in View of Any of the Low Pivot References

Claim 7 depends from independent claim 1, which as discussed *supra* is unpatentable.  Claim 7 is obvious over Mulhern '715 in view of any of the Low Pivot References, or Goertzen in view of any of the Low Pivot References.

Claim 7 recites a wheelchair wherein the mounting plate is substantially planar and is oriented perpendicular to the drive wheel axis.  Mulhern '715 teaches this limitation.  A person of skill in the art would understand "oriented perpendicular to the drive wheel axis" to mean oriented such that the longest side of the plate is positioned at an approximately 90 degree angle to the drive wheel

53

axis. *See* Richter Decl. ¶ 86 (Ex. 1008). As can be seen in Figure 5, previously

reproduced, the upper mounting plate 58 is planar, and the longest side of the plate

is positioned at a 90 degree angle to the drive wheel axis $P_A$. *See* Mulhern '715

Fig. 5, ¶ [0037] (Ex. 1002).

Goertzen also teaches this limitation. As can be seen in Figure 3 of

Goertzen, mounting plate 308 is substantially planar and is oriented perpendicular

to the drive wheel axis 311. *See* Goertzen Fig. 3, p. 7, ll. 6-12 (Ex. 1003).

Because wheelchairs with a mounting plate is substantially planar and is

oriented perpendicular to the drive wheel axis were known in the art, it would have

been obvious to one of ordinary skill in the art to use such a structure in the

wheelchair of claim 1. This amounts to a routine design choice that would have

yielded predictable results. *See* Richter Decl. ¶ 88 (Ex. 1008). Accordingly, claim

7 is not patentable.

| Claim 7: The wheelchair of claim 1, wherein the mounting plate is substantially planar and is oriented perpendicular to the drive wheel axis. | *See, e.g.*, Mulhern '715 ¶ [0037]; Fig. 5 (Ex. 1002); Goertzen p. 7, ll. 6-12; Fig. 3 (Ex. 1003). |
| --- | --- |

**7.    Claim 8 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in View of Any of the Low Pivot References, or Fought in View of Any of the Low Pivot References**

Claim 8 depends from independent claim 1, which as discussed *supra* is

unpatentable. Claim 8 is obvious over Mulhern '715 in view of any of the Low

Pivot References, Goertzen in view of any of the Low Pivot References, or Fought in view of any one of the Low Pivot References.

Claim 8 recites a wheelchair wherein motor torque causes the mounting plate, drive, and front arm to pivot about the pivot axis. Mulhern '715 teaches this limitation, as discussed *supra* in Section VIII.A.1. *See, e.g.*, Mulhern '715 Fig. 4, ¶ [0038] (Ex. 1002). Goertzen also discloses this claim limitation, as is discussed *supra* in Section VIII.A.3. *See, e.g.*, Goertzen p. 10, ll. 11-22, Fig. 5B (Ex. 1003). Fought also teaches this claim limitation, as is discussed *supra* in Section VIII.A.4. *See, e.g.*, Fought ¶¶ [0029], [0031], Figs. 5, 7 (Ex. 1004).

Because wheelchairs wherein motor torque causes the mounting plate, drive, and front arm to pivot about the pivot axis were known in the art, it would have been obvious to one of ordinary skill in the art to use such a feature in the wheelchair of claim 1. This amounts to a routine design choice that would have yielded predictable results. *See* Richter Decl. ¶ 91 (Ex. 1008). Accordingly, claim 8 is not patentable.

| Claim 8: The wheelchair of claim 1, wherein motor torque causes the mounting plate, drive, and front arm to pivot about the pivot axis. | *See, e.g.*, Mulhern '715 ¶¶ [0038], [0040], Fig. 4 (Ex. 1002); Goertzen p. 2, ll. 22-25, p. 3, ll. 7-14, p. 8, l. 23 – p. 9, l. 8, p. 9, ll. 14-16; p. 10, ll. 11-24, p. 16, ll. 11-26, p. 18, ll. 1-14; Figs. 5B, 11B (Ex. 1003); Fought ¶¶ [0019], [0029], [0032]; Figs. 5, 8 (Ex. 1004); Hosino 6:44-49, Fig. 9 (Ex. 1005). |
|---|---|

### 8.    Claim 9 is Unpatentable over Goertzen in View of Any of the Low Pivot References

Claim 9 depends from claim 8, which as discussed *supra* is unpatentable.

Claim 9 is obvious over Goertzen in view of any of the Low Pivot References.

Claim 9 recites a wheelchair wherein the frame moves upwardly with

respect to the drive wheel axis by an angle when the mounting plate pivots about

the pivot axis.  Goertzen teaches this limitation.  Figure 5D shows wheelchair

frame 120 moving upwardly with respect to the drive wheel axis by an angle as

front arm 132, mounting plate 308, and drive motor 136 pivot about pivot axis 330.

*See, e.g.*, Goertzen Fig. 5D, Fig. 11D,

p. 11, ll. 5-10 (Ex. 1003).



**Goertzen, Figure 5D (Ex. 1003)**

Because wheelchairs with a

frame that moves upwardly with

respect to the drive wheel axis by an

angle when the mounting plate pivots

about the pivot axis were known in

the art, it would have been obvious to

one of ordinary skill in the art to use such a feature in the wheelchair of claim 1.

This amounts to a routine design choice that would have yielded predictable

results.  *See* Richter Decl. ¶ 94 (Ex. 1008).  Accordingly, claim 9 is not patentable.

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

| Claim 9: The wheelchair of claim 8, wherein the frame moves upwardly with respect to the drive wheel axis by an angle when the mounting plate pivots about the pivot axis. | *See, e.g.*, Goertzen p. 11, ll. 5-10; p. 18, ll. 28-32; p. 19, ll. 1-4 Figs. 5D, 11D (Ex. 1003). |
|---|---|

### 9. Claim 10 is Unpatentable over Mulhern '715 in View of Any of the Low Pivot References, Goertzen in Vie of Any of the Low Pivot References, or Fought in View of Any of the Low Pivot References

Claim 10 depends from independent claim 1, which as discussed *supra* is unpatentable. Claim 10 is obvious over Mulhern '715 in view of any of the Low Pivot References, Goertzen in view of any of the Low Pivot References, or Fought in view of any one of the Low Pivot References.

Claim 10 recites a wheelchair wherein motor torque causes the pivot axis to move relative the drive wheel axis. Mulhern '715 teaches this limitation. As can be seen in Figs. 4 and 5, reproduced below, when motor torque is applied to the drive wheel as in Figure 4, the drive wheel axis $P_A$ moves slightly forward of the pivot axis 8; when the braking is applied as in Figure 5, the drive wheel axis $P_A$ moves slightly behind the pivot axis 8. *See* Mulhern '715 Figs. 4, 5, ¶¶ [0038]-[0041] (Ex. 1002).



**Mulhern '715, Figures 4 and 5 (Ex. 1002)**

Goertzen also teaches this limitation.  As can be seen in Figs. 5A and 5B, reproduced below, when motor torque is applied to the drive wheel as in Figure 5B, the drive wheel axis moves forward relative to the pivot axis 330, as compared to the relative position of the drive wheel axis and pivot axis 330 in Figure 5A. *See* Goertzen Figs. 5A, 5B, p. 10, ll. 4-24 (Ex. 1003).



**Goertzen, Figures 5A and 5B (Ex. 1003)**

58

Fought also teaches this limitation.  As can be seen in Figs. 7 and 8,

reproduced below, when motor torque is applied to the drive wheel as in Figure 8,

the drive wheel axis moves forward relative to the pivot axis P, as compared to the

relative position of the drive wheel axis and pivot axis P in Figure 7.  *See* Fought

Figs. 7, 8, ¶¶ [0031], [0032] (Ex. 1004).



**Fought, Figures 7 and 8 (Ex. 1004)**

Because wheelchairs wherein motor torque causes the pivot axis to move

relative the drive wheel axis were known in the art, it would have been obvious to

one of ordinary skill in the art to use such a feature in the wheelchair of claim 1.

This amounts to a routine design choice that would have yielded predictable

results.  *See* Richter Decl. ¶ 99 (Ex. 1008).  Accordingly, claim 10 is not

patentable.

| **Claim 10: The wheelchair of claim 1, wherein motor torque causes the pivot axis to move relative the drive wheel axis.** | *See, e.g.*, Mulhern '715 abstract; ¶¶ [0009], [0033], [0038]-[0041], [0066]-[0069]; Figs. 4-5 (Ex. 1002); Goertzen p. 10, ll. 4-24; p. 18, ll. 1-14; Figs. 5A, 5B, 11A, 11B (Ex. 1003); Fought ¶¶ [0031]-[0032]; Figs. 7-8  (Ex. 1004). |
|---|---|

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

Based on the foregoing, claims 1-10 of the '343 patent recite subject matter that is obvious.  The Petitioner requests institution of an *inter partes* review to cancel those claims.

Respectfully submitted,

Permobil, Inc.,
Petitioner

Customer Number: 24395

Tel: 202-663-6025
Fax: 202-663-6363

By: /David L. Cavanaugh/
David L. Cavanaugh
Registration No. 36,476
Wilmer Cutler Pickering
Hale and Dorr LLP

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2013, I caused a true and correct copy of the

foregoing materials:

- Petition for *Inter Partes Review* of U.S. Patent No. 8,408,343 Under

    35 U.S.C. § 312 and 37 C.F.R. § 42.104

- Exhibits 1001-1011.

- List of Exhibits for Petition for *Inter Partes* Review of U.S. Patent

    No. 8,408,343 (Exhibits 1001-1011)

- Fee Authorization

- Power of Attorney

to be served via Federal Express on the following attorney of record as listed on

PAIR:

Gary H. Levin
Woodcock Washburn, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

<u>/David L. Cavanaugh/</u>

David L. Cavanaugh

Registration No. 36,476

U.S. Patent 8,408,343
Petition for *Inter Partes* Review

## LIST OF EXHIBITS FOR
## PETITION FOR *INTER PARTES* REVIEW OF
## U.S. PATENT NO. 8,408,343

| Exhibit | Description |
|---|---|
| 1001 | U.S. Patent No. 8,408,343, entitled "Powered Wheelchair Configurations And Related Methods Of Use," to Puskar-Pasewicz *et al*., issued Apr. 2, 2013. |
| 1002 | U.S. Patent Application Publication No. 2005/0077715, entitled "Active Anti-Tip System For Power Wheelchairs," to Mulhern *et al*., published Apr. 14, 2005.  ("Mulhern '715") |
| 1003 | PCT Publication No. WO 02/34190, entitled "Obstacle Traversing Wheelchair" to Goertzen, published May 2, 2002 ("Goertzen") |
| 1004 | U.S. Patent Application Publication No. 2003/0075365, entitled "Wheelchair Suspension Having Pivotal Motor Mount," to Fought, published Apr. 24, 2002.  ("Fought") |
| 1005 | U.S. Patent No. 6,454,286, entitled "Traveling Device For Smooth and Stable Movement On Uneven and Inclined Surfaces," to Hosino, issued Sept. 24, 2002.  ("Hosino") |
| 1006 | U.S. Patent Application Publication No. 2003/0205420, entitled "Active Anti-Tip System For Power Wheelchairs," to Mulhern *et al*., published Apr. 14, 2005.  ("Mulhern '420") |
| 1007 | Japanese Patent Application Publication No. JP 2001104391, entitled "Wheelchair," to Harakawa, published Apr. 17, 2001. ("Harakawa") |
| 1008 | Declaration of W. Mark Richter, Ph.D. |
| 1009 | U.S. Patent No. 8,408,343 File History, 1/22/2013 Applicant-Initiated Interview Summary |
| 1010 | U.S. Patent No. 8,408,343 File History, 1/11/2013 Amendment and Response |
| 1011 | U.S. Patent No. 8,408,343 File History, 12/26/2012 Non-Final Office Action |

Filed on behalf of Permobil Inc.
By:   David L. Cavanaugh, Reg. No. 36,476
        Owen K. Allen, Reg. No. 71,118
        Wilmer Cutler Pickering Hale and Dorr LLP
        1875 Pennsylvania Ave., NW
        Washington, DC 20006
        Tel:  (202) 663-6000
        Email:  David.Cavanaugh@wilmerhale.com
                    Owen.Allen@wilmerhale.com

UNITED STATES PATENT AND TRADEMARK OFFICE

―――――――――――――――――――――――――――

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

―――――――――――――――――――――――――――

PERMOBIL INC.
Petitioner

v.

Patent Owner of
U.S. Patent No. 8,408,598 to Mulhern et al.

**PETITION FOR *INTER PARTES* REVIEW OF
U.S. PATENT NO. 8,408,598
UNDER 35 U.S.C. § 312 AND 37 C.F.R. § 42.104**

# TABLE OF CONTENTS

I.   MANDATORY NOTICES .................................................................1

    A.   Real Party-in-Interest .........................................................1

    B.   Related Matters .................................................................1

    C.   Counsel ............................................................................2

    D.   Service Information ...........................................................2

II.  CERTIFICATION OF GROUNDS FOR STANDING .................2

III. OVERVIEW OF CHALLENGE AND RELIEF REQUESTED ...................2

    A.   Prior Art Patents and Printed Publications...........................3

    B.   Grounds for Challenge ......................................................4

IV.  LEGAL PRINCIPLES...........................................................4

V.   CLAIM CONSTRUCTION .....................................................6

VI.  OVERVIEW OF THE '598 PATENT .......................................6

    A.   State of the Art of Wheelchair Design in 2003 .....................7

    B.   The '598 Patent ..............................................................11

    C.   Summary of the Prosecution History of the '598 Patent ...................14

        1.   Related *Inter Partes* Reexamination For Parent U.S. Patent No.  8,181,992 (Control No. 95/002,355) ..............................................................14

        2.   File History of the '598 patent................................15

VII. THE CHALLENGED CLAIMS ARE UNPATENTABLE..........................16

    A.   The Primary References ...................................................17

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

    1.   Schaffner ........................................................................17

    2.   Goertzen ........................................................................18

  B.   The Low Pivot References .............................................18

VIII.  IDENTIFICATION OF HOW THE CHALLENGED CLAIMS ARE
       UNPATENTABLE.............................................................19

  A.   Independent Claim 1 ......................................................19

    1.   Claim 1 is Unpatentable over Schaffner ...................20

    2.   Claim 1 is Unpatentable over Schaffner in View of
         Any One of the Low Pivot References ...................25

    3.   Claim 1 is Unpatentable over Goertzen in View of
         Any One of the Low Pivot References ...................34

  B.   Independent Claim 7 ......................................................39

    1.   Claim 7 is Unpatentable over Schaffner ...................40

    2.   Claim 7 is Unpatentable over Schaffner in View of
         Any One of the Low Pivot References ...................42

    3.   Claim 7 is Unpatentable over Goertzen in View of
         Any One of the Low Pivot References ...................43

  C.   The Dependent Claims Are Unpatentable .........................47

    1.   Claims 2 and 9 are Unpatentable Over Schaffner in
         View of Any of the Low Pivot References, or
         Goertzen in View of Any of the Low Pivot
         References and Further in View of Either
         Schaffner or Clark...............................................47

    2.   Claims 3 and 10 are Unpatentable over Schaffner
         in View of Any of the Low Pivot References, or
         Goertzen in View of Any of the Low Pivot
         References and Further in View of Schaffner .........50

ii

3.    Claims 4 and 11 are Unpatentable over Schaffner
      in View of Any of the Low Pivot References or
      Goertzen in View of Any One of the Low Pivot
      References ................................................................................53

4.    Claims 5 and 12 are Unpatentable over Schaffner
      in View of Any of the Low Pivot References or
      Goertzen in View of Any of the Low Pivot
      References ................................................................................54

5.    Claims 6 and 13 are Unpatentable over Schaffner
      in View of Any of the Low Pivot References or
      Goertzen in View of Any One of the Low Pivot
      References ................................................................................57

6.    Claim 8 is Unpatentable over Schaffner in View of
      Any of the Low Pivot References or Goertzen in
      View of Any of the Low Pivot References ...............................59

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Pride Mobility Products Corp. v. Permobil, Inc.,*
No. 2:13-cv-01999-LDD (E.D. Pa. filed 4/15/2013)............................................1

*Pride Mobility Products Corp. v. Permobil, Inc.,*
No. 2:12-cv-03931 (E.D. Pa.) .................................................................1

*Graham v. John Deere Co.,*
383 U.S. 1 (1966)................................................................................4

*In re ICON Health and Fitness, Inc.,*
496 F.3d 1374 (Fed. Cir. 2007) ...............................................................6

*KSR Int'l Co. v. Teleflex, Inc.,*
550 U.S. 398 (2007)..........................................................................4, 5

*Rockwell Int'l Corp.v. United States,*
147 F.3d 1358 (Fed. Cir. 1998) ...............................................................4

STATUTES

35 U.S.C. § 102(a) ....................................................................................3

35 U.S.C. § 102(b) .................................................................................3, 7

35 U.S.C. § 103 .....................................................................................4, 5

35 U.S.C. § 112 .........................................................................................6

35 U.S.C. § 314(a) .....................................................................................4

OTHER AUTHORITIES

Rule 42.22(a)(1)........................................................................................2

Rule 42.100(b) ..........................................................................................6

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

Rule 42.104(a)......................................................................................................2

Rule 42.104(b)(1)-(2)..........................................................................................2

Rule 42.104(b)(4)-(5)........................................................................................19

77 Fed. Reg. 48764 (Aug. 14, 2012) ...................................................................6

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

## I.    MANDATORY NOTICES

### A.    Real Party-in-Interest

Permobil Inc. ("Petitioner") is the real party-in-interest and submits this *inter partes* review Petition ("Petition") for review of certain claims of U.S. Patent No. 8,408,598 (the "'598 patent").

### B.    Related Matters

The following litigation matter would affect or be affected by a decision in this proceeding: *Pride Mobility Products Corp. v. Permobil, Inc.*, No. 2:13-cv-01999-LDD (E.D. Pa. filed 4/15/2013).  The litigation involves two patents: the '598 patent and U.S. Patent No. 8,408,343 (the "'343 patent").  The parent patent of the '598 patent – U.S. Patent No. 8,181,992 (the "'992 patent) – is the subject of an *inter partes* reexamination proceeding, Control No. 95/002,355.[1]  The claims of the '598 patent are the subject of this Petition.  A separate petition for *inter partes* review of the '343 patent is being filed concurrently with this petition.  Because the technology and disclosure in the patents are similar and for the sake of administrative efficiency and consistent outcome, Petitioner requests that the

---

[1] The '992 patent is also the subject of a district court litigation—*Pride Mobility Products Corp. v. Permobil, Inc.*, No. 2:12cv03931 (E.D. Pa.)—that is currently stayed pending the outcome of the *inter partes* reexamination proceeding.

Patent Trial and Appeals Board ("PTAB") have a single Administrative panel address these two *inter partes* reviews.

### C.    Counsel

Lead Counsel: David L. Cavanaugh (Registration No. 36,476)

Backup Counsel: Owen K. Allen (Registration No. 71,118)

### D.    Service Information

Email:  David.Cavanaugh@wilmerhale.com

Post and hand delivery:   Wilmer Cutler Pickering Hale and Dorr LLP

1875 Pennsylvania Ave, NW

Washington, DC 20006

Telephone: 202-663-6025          Facsimile: 202-663-6363

## II.    CERTIFICATION OF GROUNDS FOR STANDING

Petitioner certifies pursuant to Rule 42.104(a) that the patent for which review is sought is available for *inter partes* review and that Petitioner is not barred or estopped from requesting an *inter partes* review challenging the patent claims on the grounds identified in this Petition.

## III.    OVERVIEW OF CHALLENGE AND RELIEF REQUESTED

Pursuant to Rules 42.22(a)(1) and 42.104(b)(1)-(2), Petitioner challenges claims 1-13 of the '598 patent (Ex. 1001).

**A.     Prior Art Patents and Printed Publications**

Petitioner relies upon the following patents and printed publications:

1.  U.S. Patent No. 6,129,165 ("Schaffner"; Ex. 1002), which issued on October 10, 2000, and is prior art to the '598 patent under 35 U.S.C. § 102(b).

2.  International Publication No. WO 02/34190 ("Goertzen"; Ex. 1003), which was published on May 2, 2002, and is prior art to the '598 patent under 35 U.S.C. § 102(b).

3.  U.S. Patent No. 6,454,286 ("Hosino"; Ex. 1004), which issued on September 24, 2002 and is prior art to the '598 patent under 35 U.S.C. § 102(b).

4.  U.S. Patent Application Publication No. 2003/0205420 ("Mulhern '420"; Ex. 1005), which has a filing date of May 6, 2002, and is prior art to the '598 patent under 35 U.S.C. § 102(a).

5.  Japanese Patent No. JP 2001104391 ("Harakawa"; Ex. 1006), which was published on April 17, 2001, and is prior art to the '598 patent under 35 U.S.C. § 102(b).

6.  Canada Patent Application No. 2,254,372 ("Clark"; Ex. 1007), which was published on May 17, 2000, and is prior art to the '598 patent under 35 U.S.C. § 102(b).

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

**B.      Grounds for Challenge**

Petitioner requests cancellation of claims 1-13, the challenged claims, as

unpatentable under 35 U.S.C. § 103.

This Petition, supported by the declaration of  Dr. Mark Richter  ("Richter

Declaration" or "Richter Decl."; Ex. 1008) filed with this Petition, demonstrates

that there is a reasonable likelihood that Petitioner will prevail with respect to at

least one of the challenged claims and that each of the challenged claims is

unpatentable for the reasons cited in this petition.  *See* 35 U.S.C. § 314(a).

**IV.   LEGAL PRINCIPLES**

The challenged claims are unpatentable because they are obvious under 35

U.S.C. § 103.  A claim is invalid if it would have been obvious—that is,

> if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have
> been obvious at the time the invention was made to a person having
> ordinary skill in the art to which [the] subject matter pertains.

35 U.S.C. § 103; *see also Rockwell Int'l Corp.v. United States*, 147 F.3d 1358,

1364 (Fed. Cir. 1998).

In *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 415 (2007), the

U.S. Supreme Court addressed the issue of obviousness and provided an

"expansive and flexible" approach that is consistent with the "broad inquiry" set

forth in *Graham v. John Deere Co.*, 383 U.S. 1 (1966).  According to the Supreme

4

Court, a person of ordinary skill in the art is "a person of ordinary creativity, not an automaton," *KSR*, 550 U.S. at 421, and "in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle," *id.* at 420.  The Court held that

> [w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp. If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance the fact that a combination was obvious to try might show that it was obvious under [35 U.S.C.] § 103.

*Id.* at 421.  Thus, *KSR* focused on whether a combination of known elements could be patentable if it yielded predictable results.  The Court's guidance was clear: it may not.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id.* at 416.  Further, "[i]f a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability."  *Id.* at 417.

The Board must ask, as guided by *KSR*, whether the challenged claims recite an improvement that is "more than the predictable use of prior art elements according to their established functions."  *Id.* at 417.  The Board should conclude, based on the information in this Petition, that the challenged claims are merely a

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

predictable combination of known elements that are used according to their established functions, and that they are therefore unpatentable, and an *inter partes* review of the challenged claims should therefore be instituted..

## V.    CLAIM CONSTRUCTION

A claim in *inter partes* review is given the "broadest reasonable construction in light of the specification." 37 C.F.R. § 42.100(b).  Any claim term which lacks a definition in the specification is therefore also given a broad interpretation.  *In re ICON Health and Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007).  For the purposes of this proceeding, claim terms are to be given their broadest reasonable interpretation in light of the specification as commonly understood by those of ordinary skill in the art.  Moreover, should the Patent Owner, in order to avoid the prior art, contend that the claims have a construction different from their broadest reasonable construction, the appropriate course is for the Patent Owner to seek to amend the claims to expressly correspond to its contentions in this proceeding.  *See* 77 Fed. Reg. 48764 (Aug. 14, 2012).  Any such amendment would only be permissible if the proposed amended claims comply with 35 U.S.C. §112.

## VI.    OVERVIEW OF THE '598 PATENT

The application that issued as the '598 patent (Ex.1001) was filed on May 4, 2012, and is a continuation of U.S. Patent No. 8,181,992, which was filed on January 20, 2011, which is a continuation of U.S. Patent No. 7,931,300, which was

filed on May 14, 2010, which is a continuation of U.S. Patent No. 7,726,689,

which was filed on July 10, 2008, which is a continuation of U.S. Patent No.

7,413,038, which was filed on July 13, 2005, which is a continuation-in-part of

U.S. Patent No. 7,389,835, which was filed on October 8, 2004.  The '598 patent

claims priority to provisional application nos. 60/509,649 and 60/509,495, both

filed on October 8, 2003.

### A.  State of the Art of Wheelchair Design in 2003

At the time of the claimed priority date of the '598 patent (*i.e.*, October

2003), powered wheelchairs having a frame, a pair of drive wheels, and a drive

assembly (*e.g.*, motor) for driving the drive wheels were well known in the art.

Goertzen, which was published in 2002 (and is thus prior art to the '598 patent

under 35 U.S.C. § 102(b)), illustrates a powered wheelchair having these features,

as is shown in Figure 4A, reproduced below:

U.S. Patent 8,408,598
Petition for *Inter Partes* Review



**Goertzen, Figure 4A (Ex. 1003)**

It was also known in the art to have a front arm with a caster wheel on the

end of the arm.  These front arms were routinely pivotably mounted to the frame at

an arm pivot axis.  In Figure 4A above, Goertzen again shows a front arm that is

pivotably mounted to the wheelchair frame at a pivot point P, and a front caster

wheel coupled to the front of the arm.

Further, it was known in the art to operatively couple the drive assembly

(*e.g.*, motor) to the front arm so that the arm pivots about the arm pivot axis in

response to torque created by rotation of the drive wheel, so as to cause the caster wheel to move vertically.  Goertzen demonstrates this design feature in Figure 5B:



**Goertzen, Figure 5B (Ex. 1003)**

It was also well known in the art that a pivot axis could be placed at various locations on a wheelchair.  Wheelchairs with a relatively high pivot axis, such as the chair in Goertzen, were known.  Wheelchairs with a relatively low pivot axis, such as the chair in Hosino Figure 2 (shown below), were also known.



**Hosino, Figure 2 (Ex. 1004)**

Furthermore, it was known in the art that two separate pivot axes could be used—a drive assembly pivot axis and a front arm pivot axis—so as to allow the front arm to pivot separately from the drive assembly.  Schaffner teaches this design feature in Figure 27:



**Schaffner, Figure 27 (Ex. 1002)**

10

**B.     The '598 Patent**

The '598 patent describes an anti-tip system for improving the stability of a

powered wheelchair.  *See, e.g.*, '598 patent, Abstract (Ex. 1001).  The patent

provides a drive-train assembly that is pivotally mounted to a main structural frame

and rotates about the pivot in response to torque applied to or acceleration forces

on the wheelchair.  *See, e.g.*, *id.* (Ex. 1001).  A front suspension arm is provided

that is pivotally mounted to the frame about an arm pivot axis at one end, and has

either an anti-tip wheel or a caster wheel attached to the end.  *See, e.g.*, *id.* (Ex.

1001).  A linkage arrangement provides a link between the drive train assembly

and the suspension arm to transfer the displacement of the drive-train assembly to

the suspension arm and the front wheel.  *See, e.g.*, *id.* (Ex. 1001).

Figures 2 and 4, reproduced below, illustrate one embodiment of the

wheelchair described in the '598 patent.  Figure 4 shows the wheelchair during

acceleration of the chair, causing the front wheels to rise vertically and the drive

train assembly to pivot clockwise about the pivot axis in response to the

acceleration of the drive wheels.

11



**'598 Patent, Figures 2 and 4 (Ex. 1001)**

Figures 6 and 7, reproduced below, illustrate a second embodiment of the wheelchair in a normal resting position (Fig. 6) and during acceleration (Fig. 7). Notably, this second embodiment has front caster wheels instead of front anti-tip wheels, demonstrating that caster wheels and anti-tip wheels were used interchangeably and were both tools available to a person of skill in the art during the wheelchair design process.

12



**'598 Patent, Figures 6 and 7 (w/ line connecting wheel axes added)(Ex. 1001)**

In Figure 6 above, a line connecting the front wheel axis and the drive wheel axis has been drawn over the figure to show the relative location of the pivot axis (i.e., below-the-line). While the claims recite this configuration, the '598 patent specification does not explicitly describe such a line connecting the wheel axes, nor does it explain the benefits of locating the arm pivot axis below this particular line. *See* Richter Decl. ¶ 22 (Ex. 1008).

The claimed wheelchair is merely the combination of known elements from existing wheelchairs where each element performs as expected and the combination yields predictable results. *See* Richter Decl. ¶ 23 (Ex. 1008). As shown by the Exhibits and the Richter Declaration, the claimed wheelchair would have been obvious to a person of ordinary skill in the art.

13

**C.      Summary of the Prosecution History of the '598 Patent**

**1.      Related *Inter Partes* Reexamination For Parent U.S. Patent No.  8,181,992 (Control No. 95/002,355)**

U.S. Patent No. 8,181,992 (the "'992 patent"), the parent patent to the '598

patent, is currently undergoing *inter partes* reexamination.  On April 24, 2013, the

Examiner issued an Action Closing Prosecution, finally rejecting all 21 claims of

the '992 patent.  *See* File History of '992 Reexamination, 4/24/2013 Action

Closing Prosecution (Ex. 1010).

The claims that currently stand rejected in the '992 patent are strikingly

similar to the claims of the '598 patent.  For example, claim 1 of the '992 patent

and claim 1 of the '598 patent both claim (a) a wheelchair frame, (b) a pair of drive

wheels, (c) a drive assembly operatively coupled to at least one drive wheel for

powering the drive wheel(s), (d) an arm pivotably mounted to the frame at an arm

pivot axis, and (e) a wheel coupled to the arm, wherein (f) the arm pivot axis is

located below a line connecting the front wheel axis and the drive wheel axis, and

(g) in response to motor torque to drive the drive wheel, the arm pivots about the

arm pivot axis and results in vertical movement of the wheel.  *See* '992 patent,

Claim 1 (Ex. 1009); '598 patent, Claim 1 (Ex. 1001).

Claim 1 of the '598 patent has only two additional limitations compared to

claim 1 of the '992 patent: (1) a ***caster wheel*** coupled to the arm (compared to an

anti-tip wheel in the '992 patent) and (2) a requirement that the arm pivot axis be below the line connecting the wheel axes **when both the drive wheel and the front caster wheel are in contact with the ground**.  The Patent Owner added these new limitations to claim 1 of the '598 patent application in a November 5, 2012 amendment, about two months after the Third Party Requester filed its Request for *Inter Partes* Reexamination for the '992 patent.  *See* '598 Patent File History, 11/5/12 Reply to Office Action (Ex. 1011).  Presumably, the Patent Owner added these limitations to attempt to distinguish its new claims over the invalidating prior art identified by the Third Party Requester.  In any event, it is clear that these two additional claim limitations do not define anything that was not already known in the art.

In the Action Closing Prosecution for the Reexamination, the Examiner rejected all 21 claims as either anticipated or rendered obvious over Schaffner or Clark, in combination with several secondary references.  *See* File History of '992 Reexamination, 4/24/2013 Action Closing Prosecution (Ex. 1010).   As will be explained below, the claims of the '598 patent are also rendered by obvious by, *inter alia*, Schaffner, either alone or in in combination with other references.

### 2.    File History of the '598 patent

The Examiner issued a non-final office action rejecting or objecting to the pending claims.  *See* '598 Patent File History, 6/15/12 Non-Final Office Action

(Ex. 1012).  Approximately two months after the Request for Reexamination was filed in for the '992 patent, the Patent Owner filed a response, canceling all of the pending claims and adding new claims 15-27, adding the two new limitations as discussed above.  *See* '598 Patent File History, 11/15/12 Reply to Office Action (Ex. 1011).

About one month later, the Examiner issued a final office action rejecting the new claims as obvious over Clark (Canada Patent No. 2,254,372).  *See* '598 Patent File History, December 21, 2012 Office Action (Ex. 1013).  The Patent Owner held an interview with the Examiner and filed a reply, in which the Patent Owner argued that "Clark's suspension arm 60 does not rotate about its pivot axis 80 'in response to [motor] torque' as required in all the pending claims."  *See* '598 Patent File History, February 4, 2013 Reply (Ex. 1014).  The Patent Owner did not attempt to distinguish the pending claims from Clark in any other way; as shown by the references below, the distinction upon which the Patent Owner seeks to base patentability is well known.

## VII.   THE CHALLENGED CLAIMS ARE UNPATENTABLE

The challenged claims recite features long known by persons of skill in the art in the field of wheelchair design.  *See* Richter Decl. ¶¶ 14-21 (Ex. 1008).  The purported invention is a combination of known features, all of which were well known to those skilled in the art before and at the time to which the '598 patent

claims priority.  In the claimed combinations, the structures all have known

functions that perform in expected ways.  *See id.* (Ex. 1008).  Based on the prior

art cited above and described below, the claimed limitations of the alleged

invention perform known functions with an expected result.

The prior art falls into two categories: (1) the Primary References (*i.e.*,

Schaffner and Goertzen); and (2) prior art references that disclose or make obvious

the claimed pivot point that is located below a straight line between the front wheel

axis and the drive wheel axis (Hosino, Mulhern '420, and Harakawa, *i.e.*, the "Low

Pivot References").  The Low Pivot References also teach, make obvious, and

provide one of ordinary skill in the art with ample reason and motivation to place a

front arm pivot point below this line between the wheel axes.

## A.    The Primary References

### 1.    Schaffner

Schaffner teaches a powered wheelchair having a frame, a pair of main drive

wheels, a drive assembly with a motor to drive the main drive wheels, a pair of

front arms with anti-tip wheels attached at the ends, and arm pivots connecting the

front arms to the frame.  *See, e.g.*, Schaffner Figs. 2, 27 (Ex. 1002).  Schaffner

further teaches a mechanism for raising the front anti-tip wheels when the chair

accelerates.  *See, e.g.*, *id.* 23:9-26; 24: 34-54, 26:64-27:10 (Ex. 1002).

17

### 2.    Goertzen

The Goertzen reference teaches a powered wheelchair having a frame, a pair of main drive wheels, a drive assembly with a motor to drive the main drive wheels, a pair of front arms with front caster wheels attached at the ends, and arm pivots connecting the front arms to the frame.  *See, e.g.*, Goertzen Fig. 4A; p. 5, l. 12-p. 6, l. 15 (Ex. 1003).  Goertzen further teaches a mechanism for raising the front caster wheels when the chair accelerates, and lowering the front caster wheels when the chair decelerates.  *See, e.g., id.* Figs. 4B, 4C, p. 8, l. 23-p. 9, l. 18 (Ex. 1003).

### B.    The Low Pivot References

Hosino (Ex. 1005), Mulhern '420 (Ex. 1006), and Harakawa (Ex. 1007), *i.e.*, the "Low Pivot References," disclose and/or render obvious the limitation requiring the front arm pivot to be below a line connecting the front wheel axis and the drive wheel axis.

***Hosino*** discloses a powered wheelchair with a loop frame having a pair of drive wheels, a front caster wheel, a rear caster wheel, a front arm to which the front caster wheel is attached, and an arm pivot that is located below a straight line drawn between the front caster wheel axis and the drive wheel axis.  *See* Hosino Figs. 1-2, 3:58-4:23 (Ex. 1004).  Hosino specifically states that it is preferable that

the arm pivot be "positioned generally as high as a center O2 of the front caster." *See id.* 4:18-23 (Ex. 1004).

*Mulhern '420* discloses a powered wheelchair having a pair of drive wheels, a pair of front anti-tip wheels, a pair of rear caster wheels, a pair of front arms to which the front anti-tip wheels are attached, and a pair of front arm pivots that are located below a straight line drawn between the front wheel axis and the drive wheel axis. *See Mulhern '420* Fig. 1, ¶¶ [0022] (Ex. 1005).

*Harakawa* discloses a powered wheelchair with a pair of drive wheels, a pair of front caster wheels, a pair of rear caster wheels, a pair of front arms to which the front caster wheels are attached, and a pair of front arm pivots that are located below a straight line drawn between the front wheel axis and the drive wheel axis. *See Harakawa* Fig. 1, Abstract (Ex. 1006).

## VIII.  IDENTIFICATION OF HOW THE CHALLENGED CLAIMS ARE UNPATENTABLE

Pursuant to Rule 42.104(b)(4)-(5), specific grounds identified below and discussed in the Richter Declaration show in detail the prior art disclosures that render the challenged claims unpatentable.

### A.    Independent Claim 1

Challenged claim 1 requires a wheelchair including: (a) a frame; (b) a pair of drive wheels, (c) a drive assembly operatively coupled to at least one drive wheel

and configured to rotate the at least one drive wheel to cause the wheelchair to

move; (d) an arm pivotably mounted to the frame at an arm pivot axis; (e) a caster

wheel coupled to the arm; (f) wherein the arm pivot axis is positioned below a line

connecting the axis of the caster wheel and the axis of the drive wheel when the

caster wheel and the drive wheel are on the ground; and (g) wherein the arm is

operatively coupled to the drive assembly such that the arm is configured to pivot

about the arm pivot axis in response to torque created by rotation of the at least one

drive wheel so as to cause a vertical movement of the caster wheel.  All of the

features of claim 1 are shown in the prior art.   *See* Richter Decl. ¶ 25 (Ex. 1008).

### 1.    Claim 1 is Unpatentable over Schaffner

As shown in the summary chart below and in the Richter Declaration, the

wheelchair of claim 1 is obvious

in view of Schaffner.

Schaffner discloses a

wheelchair frame, as required by

limitation 1(a).  In the

embodiment depicted in Figure

27, Schaffner teaches a

wheelchair 10 with a frame 12.



**Schaffner, Figure 27 (Ex. 1002)**

*See, e.g.*, Schaffner Fig. 27, 25:33-37 (Ex. 1002).  Schaffner also teaches a

20

wheelchair having a pair of drive wheels defining a drive wheel axis, as required

by limitation 1(b).  Again, in Figure 27, Schaffner shows a drive wheel 16 having a

drive wheel axis 24.  *See, e.g.*, *id.*, Fig. 27, 26:41-47 (Ex. 1002).  As Schaffner

illustrates, wheelchairs with a frame, drive wheels, and a drive wheel axis were

well known in the art.  *See* Richter Decl. ¶ 27 (Ex. 1008).

Schaffner further discloses a drive assembly operatively coupled to at least

one drive wheel, configured to rotate the drive wheel and cause the wheelchair to

move relative to a surface that defines a ground plane, as required by limitation

1(c).  In Figure 27, housing 80 contains motor 76 and transmission 78 for powering

drive wheel 16.  *See, e.g.*, *id.* Fig. 27, 26:41-52, 8:60-66 (Ex. 1002).  Wheelchairs

with a drive assembly configured to power the wheelchair were well known in the

art.  *See* Richter Decl. ¶ 28 (Ex. 1008).

Schaffner also discloses an arm pivotably mounted to the frame at an arm

pivot axis, as required by claim limitation 1(d): "[A]nti-tip wheels 42 move

arcuately, together with U-shaped spindle 228, as they pivot about pivotal

connection 230 relative to frame 12." *See, e.g.*, *id.* 25:59-63 (Ex. 1002).

Wheelchairs with an arm pivotably mounted to the frame at a pivot axis were

known in the art, as Schaffner demonstrates.  *See* Richter Decl. ¶ 29 (Ex. 1008).

Schaffner also discloses an arm that is operatively coupled to the drive

assembly such that the arm is configured to pivot about the arm pivot axis in

response to torque created by rotation of the at least one drive wheel by the drive

assembly so as to cause a responsive vertical movement of the wheel, as required

by claim limitation 1(g):

> Movement of motor 76 and especially pivotal movement of
> housing 80 relative to frame 12 indirectly controls action of anti-tip
> wheels 42 in the embodiment illustrated schematically in FIG. 27. …
> The linkage consisting of pivoting beam 270, vertical link 268 and
> intermediate line 274 transfer motion between the rear end of
> motor/transmission housing 80 remote from pivot point 90 and
> forward anti-tip wheels 42, thereby accomplishing indirectly the same
> action/reaction of these components to drive wheel
> acceleration/deceleration as accomplished by the direct connection
> structure illustrated in FIGS. 28 through 37.

*See, e.g.*, Schaffner 26:53-27:10 (Ex. 1002).

> When the power wheelchair accelerates, as torque generated by the
> drive motors is applied to the associated drive wheels, reaction of
> suspension member 310 to such acceleration causes suspension
> member 310 to tend to rotate about pivot connection 318 in a direction
> opposite that of rotation of the drive wheels 16.  … This acceleration
> of drive wheel 16 causes suspension member 310 to tend to rotate
> counterclockwise about pivot connection 318, lifting forward anti-tip
> wheel 42.

*See, e.g.*, *id.* 23:12-23 (Ex. 1002).  As illustrated by Schaffner, wheelchairs having

an arm that is configured to pivot about the pivot axis in response to torque

generated by the drive wheel so as to lift the front wheel were known in the art.
*See* Richter Decl. ¶ 30 (Ex. 1008).

Schaffner does not explicitly disclose a caster wheel coupled to the arm, as
recited in claim limitation 1(d), or an arm pivot axis having a vertical position
when the caster wheel and the drive wheel are in contact with the ground surface
that is positioned relatively below a line drawn between the drive wheel axis and
the rotational axis of the caster wheel, as required by claim limitation 1(e).  These
features would have been obvious to a person of ordinary skill in the art.  *See*
Richter Decl. ¶ 31 (Ex. 1008).

The use of caster wheels in wheelchairs was well known in the art.  Caster
wheels and anti-tip wheels have been commonly used in wheelchair design, and
the use of caster wheels instead of anti-tip wheels would have been a routine
design choice having predictable results.  *See* Richter Decl. ¶ 30 (Ex. 1008).
Schaffner teaches the use of caster wheels on the rear ground engaging wheels 18.
*See, e.g.*, Schaffner Fig. 2, 9:15-17 (Ex. 1002).  The '598 patent itself suggests that
caster wheels and anti-tip wheels are interchangeable: "As illustrated, the anti-tip
wheel has a fixed axis, rather than being a caster ….  However, caster type anti-tip
wheels may be used on this embodiment, as well as any of embodiments shown."
*See* '598 patent, 7:62-66 (Ex. 1001).  It would have been obvious to couple caster

wheels to the front arms of Schaffner, and the use of caster wheels would have had entirely predictable results. *See* Richter Decl. ¶ 32 (Ex. 1008).

It also would have been obvious to locate an arm pivot axis at one of numerous places in the design, including below a line drawn between the drive wheel axis and the rotational axis of the caster wheel, when both wheels are on the ground as recited in the claims. In related *inter partes* reexamination control no. 95/002,355, discussed *supra*, the Examiner agreed with the Requester that the location of the arm pivot axis could be modified by a person of ordinary skill in the art:

> In addition, one of ordinary skill in the art would appreciate that the relative positions of the pivots 230, the drive wheel axis 24 and the rotational axes of the anti-tip wheels 42 could be modified by moving the pivots 230 downward relative to the drive wheel axis 24 and the rotational axes of the anti-tip wheels 42 in order to suit particular design criteria. … Therefore, it would have been obvious to one of ordinary skill in the art to modify Schaffner et al. by positioning each pivot 230 below a line drawn between the drive wheel axis 24 and the rotational axis of the respective anti-tip wheel 42 in order to adapt the anti-tip wheel suspension to a particular application and/or end user.

*See* Reexamination Control No. 95/002,355, 4/24/2013 Action Closing Prosecution at 13 (Ex. 1010). Further, Schaffner teaches that the height of front anti-tip wheels 42 are adjustable: "Rotation of nut 240 also adjusts the distance at which wheels 42

are from the ground." *See, e.g.*, Schaffner 26:33-40 (Ex. 1002). It would have been a matter of routine engineering design to adjust the front wheel so that it contacted the ground, and to adjust the vertical location of the arm pivot axis so that it was located below a line connecting the drive wheel axis and the front wheel axis, with predictable results. *See* Richter Decl. ¶ 33 (Ex. 1008).

Low pivot axes were also known in the art, and others have stated the advantages of locating a pivot axis in a low position. Hosino, for example, states that "it is particularly preferable that the bending portion 5 [pivot axis] is positioned generally as high as a center $O_2$ of the front caster" and that locating the pivot axis at a lower vertical location results in a larger upward vertical force component for the front caster wheel.[2] *See* Hosino 4:21-23; 6:50-65 (Ex. 1004). *See* Richter Decl. ¶ 33 (Ex. 1008). Accordingly, claim 1 is obvious over Schaffner.

### 2.    Claim 1 is Unpatentable over Schaffner in View of Any One of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 1 is obvious in view of Schaffner combined with any one of the Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

As discussed *supra* in Section VIII.A.1, Schaffner discloses all of the limitations of claim 1 except for a caster wheel coupled to the front arm (limitation

---

[2] See Section VIII.A.2.a), *infra*, for a complete discussion of Hosino.

1(e)) and a vertical position of the arm pivot axis that is located below a line drawn

between the drive wheel axis and the rotational axis of the front caster wheel when

the wheels are on the ground surface (limitation 1(f)).  Although these limitations

would have been obvious to a person of ordinary skill in the art under Schaffner

alone, claim 1 also would have been obvious over Schaffner in view of any of

Hosino, Mulhern '420, or Harakawa (*i.e.*, the "Low Pivot References").

### a)   Claim 1 is Obvious over Schaffner in View of Hosino

Claim 1 is obvious over Schaffner in view of Hosino.  Hosino discloses a

wheelchair with an arm pivot axis having a vertical position when the caster wheel

and the drive wheel are in contact with the surface that is spaced from and

positioned relatively below a straight line drawn between the drive wheel axis and

the rotational axis of the caster

wheel, as claim limitation 1(f)

requires.  Hosino discloses a

wheelchair 1 with a loop frame 2

having a caster wheel 3a on the

front end of the frame and a

caster wheel 3b on the rear end of

the frame, as well as two large



**Hosino, Figure 2 (Ex. 1004)**

driving wheels 4.  *See* Hosino, 3:35-41 (Ex. 1004).  The loop frame 2 has a

bendable portion 5, which allows the side frame to bend upward or downwards. *See id.*, 3:41-45 (Ex. 1004). "The front half-frame 2a has a pair of rear end portions furcating like a two-prong fork in which the respective front end portion of the rear half-frame 2b is connected by means of a pivot or any other suitable method so as to form the bendable portion 5 which is allowed to bend upwardly and downwardly." *Id.*, 3:66-4:5 (Ex. 1004). Figure 2 shows the loop frame 2 with pivot point 5. *See* Richter Decl. ¶ 36 (Ex. 1008).

As can be seen from Figure 2, pivot point 5 is positioned below a line drawn between the axis of caster wheel 3a and drive wheel axis 7. Hosino also describes the bendable portion 5 as "located in a relatively low position" and further states that "it is particularly preferable that the bending portion 5 is positioned generally as high as a center O2 of the front caster." *See id.* 4:14-15, 21-23 (Ex. 1004).

Hosino further provides a reason for locating the front arm pivot point at a relatively low position:

> As FIG. 11 and FIG. 12 show, when the front caster 3a is pressed against the projection 18, the front caster receives a pressing force $f_1$ which works parallel to a line $O_1O_2$ connecting the rotation center $O_1$ of the front-half frame 2a and the rotation center $O_2$ of the front caster. The pressing force $f_1$ can be divided into a component $f_2$ parallel to a line $O_2N$ connecting the center $O_2$ of the front caster and a point N of contact to the projection, and a component $f_3$ vertical to the same.

Only the component $f_3$ vertical to the line $O_2N$ is effective for the front caster 3a to ride over the projection. In the structure according to the FIG. 11, the rotation center $O_1$ of the front-half frame is positioned lower than the rotation axis 7 of the driving wheel, such that the vertical component $f_3$ in FIG. 11 is larger than that in FIG. 12, such that a load for running over the projection getting smaller in the former case.

*See id.* 6:50-65 (Ex. 1004). Figures 11 and 12 are reproduced below:



**Hosino, Figures 11 and 12 (Ex. 1004)**

Hosino discloses a wheelchair with an arm pivot axis that is below the line connecting the front wheel axis and the drive wheel axis when the wheels are on the ground, as claim limitation 1(f) requires. *See* Richter Decl. ¶ 39 (Ex. 1008). Thus, Hosino discloses an arm pivot axis with a vertical position that meets claim limitation 1(f). Together, Schaffner and Hosino disclose all the elements of claim 1. Schaffner discloses a powered wheelchair with front anti-tip wheels and a front

28

arm that pivots around a pivot point in response to torque from the motor, and

Hosino discloses a powered wheelchair with a front caster wheel and a front arm

that pivots around a pivot point that is below a line drawn between the axis of the

front caster wheel and the axis of the drive wheel.  It would have been obvious for

one of ordinary skill in the art to position the pivot axis of the front arm in the

Schaffner wheelchair below a line connecting the front wheel axis and the drive

wheel axis.  A person of skill in the art would recognize that there are a limited

number of design choices for the vertical position of the arm pivot axis – above the

line, at the line, or below the line – and choosing one of these three options would

be a routine design choice to a person of ordinary skill in the art.  Doing so would

be nothing more than a combination of known elements used for their known

purpose and yielding predictable results.  *See* Richter Decl. ¶ 39 (Ex. 1008).

### b) Claim 1 is Obvious over Schaffner in View of Mulhern '420

Claim 1 is obvious over Schaffner in view of Mulhern '420.[3]  Mulhern '420

discloses a powered wheelchair with front anti-tip wheels.  *See* Mulhern '420

Abstract (Ex. 1005).  Mulhern '420 discloses a front arm pivot axis having a

vertical position when the front wheel and the drive wheel are in contact with the

---

[3] Mulhern '420 differs from Hosino and Harakawa in that there is a relatively more

complete illustration of the motor and drive assembly in Mulhern '420.

surface that is spaced from and positioned relatively below a straight line drawn

between the drive wheel axis and the rotational axis of the front wheel, as claim

limitation 1(f) requires.  As shown in Figure 1, Mulhern '420 discloses a

wheelchair 10 having a forwardly extending arm 24 that is pivotally connected to

frame 60 by a bolt 32, and a wheel 22 that is connected to the front arm 24, where

the pivot point is located below a line drawn between the axis of the front wheel 22

and the axis of main drive

wheel 62.  *See id.* ¶ [0022],

Fig. 2 (Ex. 1005).



FIG. 1

**Mulhern '420, Figure 1 (Ex. 1005)**

Mulhern '420 further

explains that front wheel 22

can be lowered to the ground:

"Anti-tip wheels assembly 20

further comprises a mechanism

for lowering arm 24 and wheel 22. … In this embodiment, the lowering

mechanism is capable of holding wheel 22 in a near ground position ….  As used

herein, near ground position is understood to include a ground engaging position

wherein the wheel 22 is in contact with the ground."  *See id.* ¶ [0024] (Ex. 1005).

A person of skill in the art would understand that when the front wheel depicted in

Figure 1 is lowered to the ground, the front arm pivot point would remain below a

line drawn between the front wheel axis and the drive wheel axis. *See* Richter

Decl. ¶ 41 (Ex. 1008).

While Mulhern '420 discloses forward anti-tip wheels, it also teaches that

caster wheels and anti-tip wheels are interchangeable: "Rear wheel 64 is shown as

a caster wheel connected to frame 60, it being understood however, that the rear

wheel 64 need not be a caster wheel. Rather, rear wheel 64 may take many

alternative forms, including the form of anti-tip wheels assembly 20." *See*

Mulhern '420 ¶ [0020] (Ex. 1005). The '598 patent itself suggests that caster

wheels and anti-tip wheels are interchangeable: "As illustrated, the anti-tip wheel

has a fixed axis, rather than being a caster …. However, caster type anti-tip wheels

may be used on this embodiment, as well as any of embodiments shown." *See*

'598 patent, 7:62-66 (Ex. 1001). Persons of ordinary skill in the art would have

considered caster wheels and anti-tip wheels to be interchangeable. *See* Richter

Decl. ¶ 42 (Ex. 1008).

Mulhern '420 discloses a wheelchair with an arm pivot axis that is below the

line connecting the front wheel axis and the drive wheel axis when the wheels are

on the ground, as claim limitation 1(f) requires. *See* Richter Decl. ¶ 43 (Ex. 1008).

Thus, Mulhern '420 discloses an arm pivot axis with a vertical position that meets

claim limitation 1(f). Together, Schaffner and Mulhern '420 disclose all the

elements of claim 1. Schaffner discloses a powered wheelchair with front anti-tip

wheels and a front arm that pivots around a pivot point in response to torque from the motor, and Mulhern '420 discloses a powered wheelchair with a front anti-tip wheel and a front arm that pivots around a pivot point that is below a line drawn between the axis of the front wheel and the axis of the drive wheel.

It would have been obvious for one of ordinary skill in the art to position the pivot axis of the front arm in the Schaffner wheelchair below a line connecting the front wheel axis and the drive wheel axis. A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art. Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results. *See* Richter Decl. ¶ 44 (Ex. 1008).

### c)   Claim 1 is Obvious over Schaffner in View of Harakawa

Claim 1 is obvious over Schaffner in view of Harakawa.[4]  Harakawa discloses a wheelchair with front caster wheels. *See* Harakawa Fig. 1 (Ex. 1006). Harakawa discloses a front arm pivot axis having a vertical position when the front

_____

[4] Harakawa differs from Mulhern '420 in that there is an illustration in Harakawa of a low pivot axis with a front caster wheel.

wheel and the drive wheel are in contact with the surface that is spaced from and

positioned relatively below a straight line drawn between the drive wheel axis and

the rotational axis of the front wheel, as claim limitation 1(f) requires.  As shown

in Figure 1, reproduced below, Harakawa discloses a wheelchair 1 having a front

arm 5 that is pivotally connected to frame 7a at pivot point 6, and a front caster

wheel 14 that is connected to the front arm 5, where the pivot point is located

below a line drawn between the axis of the front wheel 14 and the axis 12 of main

drive wheel 13.  *See id.* Fig. 1 (Ex. 1006).

Harakawa discloses a
wheelchair with an arm pivot axis
that is below the line connecting
the front wheel axis and the drive
wheel axis when the wheels are on
the ground, as claim limitation
1(f) requires.  *See* Richter Decl. ¶
46 (Ex. 1008).  Thus, Harakawa



**Harakawa, Figure 1 (Ex. 1006)**

discloses an arm pivot axis with a vertical position that meets claim limitation 1(f).

Together, Schaffner and Harakawa disclose all the elements of claim 1.  Schaffner

discloses a powered wheelchair with front anti-tip wheels and a front arm that

pivots around a pivot point in response to torque from the motor, and Harakawa

discloses a powered wheelchair with a front caster wheel and a front arm that pivots around a pivot point that is below a line drawn between the axis of the front wheel and the axis of the drive wheel.

It would have been obvious for one of ordinary skill in the art to position the pivot axis of the front arm in the Schaffner wheelchair below a line connecting the front wheel axis and the drive wheel axis, as is taught in Harakawa.  A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art.  Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results.  *See* Richter Decl. ¶ 47 (Ex. 1008).

### 3.    Claim 1 is Unpatentable over Goertzen in View of Any One of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 1 is obvious in view of Goertzen combined with any one of the Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

Goertzen discloses a wheelchair frame, as required by limitation 1(a). Goertzen teaches a wheelchair 100 with a chair 120 that is adjustably mounted to frame 142.  Goertzen p. 5, ll. 21-24 (Ex. 1003).  Goertzen also teaches, "Springs

144 and 146 are coupled to the arms 132 and 134 and the frame 142." *Id.* p. 6, l.

16 (Ex. 1003).

Goertzen also discloses a pair of drive wheels required by limitation 1(b):

"The wheelchair 100 has a pair of drive wheels 102 and 104." *See id.*, p. 5, ll. 13-

14 (Ex. 1003).  Goertzen further discloses a drive assembly operatively coupled to

at least one drive wheel, configured to rotate the drive wheel and cause the

wheelchair to move relative to a surface that defines a ground plane, as required by

limitation 1(c).  "A pair of drive motors 136 and 138 and gearboxes are used to

power drive wheels 102 and 104.  The motors and their associated transmissions or

gearboxes (if any) forming a drive assembly." *See id.*, p. 6, ll. 4-6 (Ex. 1003).

Goertzen also discloses

an arm pivotably mounted to

the frame at an arm pivot

axis, as required by claim

limitation 1(d), as well as a

caster wheel coupled to the

arm, as required by limitation

1(e).  "Front casters 106 and

108 are attached to pivot

arms 132 and 134, respectively. … [P]ivot arms 132 and 134 are pivotally coupled



**Goertzen, Figure 4A (Ex. 1003)**

to frame 142 for curb climbing and descending ….”  *See id.*, p. 6, ll. 11-15 (Ex.

1003).  Figure 4A shows front caster 106 attached to pivot arm 132, which is

pivotally attached to frame 142 at pivot point P.

Goertzen also discloses an arm that is operatively coupled to the drive

assembly such that the arm is
configured to pivot about the
arm pivot axis in response to
torque created by rotation of the
at least one drive wheel by the
drive assembly so as to cause a
responsive vertical movement
of the caster wheel, as required
by claim limitation 1(g).



**Goertzen, Figure 5B (Ex. 1003)**

Goertzen teaches, “Nevertheless, in Figure 5B from preferably a standstill position,

drive motors 136 and 138 are ‘torqued’ so as to cause pivot arms 132 and 134 to

pivot about, for example, pin or bolt 440 and raise front casters 106 and 108 off the

ground.  … As shown in Figure 5B and described in connection with Figures 4A-

4C, such ‘torquing’ causes pivot arms 132 and 134 to pivot about pin 330 thereby

causing front casters 106 and 108 to rise.”  *See id.*, p. 10, ll. 11-22 (Ex. 1003).

36

Figure 5B shows the front arm 132 pivoted around pivot point 330, causing front caster 106 to raise vertically off the ground.  *See* Richter Decl. ¶ 52 (Ex. 1008).

Goertzen, however, does not disclose an arm pivot axis having a vertical position when the caster wheel and the drive wheel are in contact with the ground surface that is positioned relatively below a line drawn between the drive wheel axis and the rotational axis of the caster wheel.  As discussed *supra* in Sections VIII.A.2.a)-VIII.A.2.c), the Low Pivot References disclose or render obvious an arm pivot axis that is below the line connecting the drive wheel axis and the caster wheel axis, as required by limitation 1(f).  *See* Richter Decl. ¶ 53 (Ex. 1008).

 It would have been obvious for one of ordinary skill in the art to position the pivot axis of the front arm in the Goertzen wheelchair below a line connecting the front wheel axis and the drive wheel axis, as is taught in Hosino, Mulhern '420, and Harakawa.  A person of skill in the art would recognize that there are a limited number of design choices for the vertical position of the arm pivot axis – above the line, at the line, or below the line – and choosing one of these three options would be a routine design choice to a person of ordinary skill in the art.  Doing so would be nothing more than a combination of known elements used for their known purpose and yielding predictable results.  *See* Richter Decl. ¶ 54 (Ex. 1008).

In summary, the chart below identifies where the above prior art references disclose and/or make obvious the limitations of claim 1 of the '598 patent.

37

| | |
|---|---|
| **<u>Claim 1</u>: A wheelchair comprising:** | *See, e.g.*, Schaffner abstract; 5:44-54; Figs. 1, 27 (Ex. 1002); Goertzen abstract, p. 5, ll. 12-15, Fig. 1 (Ex. 1003); Hosino abstract; 1:51-55; Fig. 1 (Ex. 1004); Mulhern '420 abstract, Fig. 1 (Ex. 1005); Harakawa abstract; ¶¶ [0001], [0011]; Fig. 1 (Ex. 1006). |
| **(a) a frame;** | *See, e.g.*, Schaffner abstract; 25:33-37; Fig. 27 (Ex. 1002); Goertzen p. 2, ll. 15-17; p. 2, ll. 26-28; p. 5; ll. 21-24; p.6; l. 16; Fig. 3 (Ex. 1003); Hosino 5:19-28; Fig. 1 (Ex. 1004); Mulhern '420 abstract; ¶ [0019] (Ex. 1005); Harakawa abstract; ¶¶ [0001];  [0011], [0016], Fig. 1 (Ex. 1006). |
| **(b) a pair of drive wheels defining a drive wheel axis;** | *See, e.g.*, Schaffner abstract; 2:36-41; 5:50-54; 26:41-47; Figs. 1, 27 (Ex. 1002); Goertzen p. 2, ll. 21-22; p. 3, ll. 22-27; p. 5, ll. 13-14, Fig. 3 (Ex. 1003); Hosino abstract; 3:37-41; 7:40-42; Fig. 1 (Ex. 1004); Mulhern '420 ¶¶ [0020], [0051]; Fig. 1 (Ex. 1005); Harakawa ¶ [0017]; Fig. 1 (Ex. 1006). |
| **(c) a drive assembly operatively coupled to at least one drive wheel of the pair of drive wheels, the drive assembly configured to rotate the at least one drive wheel about the drive wheel axis to thereby cause the wheelchair to move relative to a surface that defines a ground plane;** | *See, e.g.*, Schaffner abstract, 2:41-60; 6:30-36; 8:60-66; 16:66-17:5; 23:12-17; 26:41-52; Fig. 27 (Ex. 1002); Goertzen p. 2, ll. 21-25; p. 6, ll. 4-6 (Ex. 1003); Hosino 2:5-8; 3:48-51, 55-57 (Ex. 1004); Mulhern '420 ¶ [0020] (Ex. 1005); Harakawa ¶ [0018], Fig. 1 (Ex. 1006). |
| **(d) an arm pivotably mounted to the frame at an arm pivot axis;** | *See, e.g.*, Schaffner 25:59-63; 26:33-30, Fig. 27 (Ex. 1002); Goertzen abstract; p. 2, ll. 6-8, 17-19, 28-30; p. 6, ll. 11-15; p. 7, ll. 24-26; p. 13, ll. 22-24; p. 14, ll. 14-15; Figs. 4A, 10A (Ex. 1003); Hosino 3:66-4:23; Fig. 2 (Ex. 1004); Mulhern '420 ¶¶ [0022]- |

| | |
|---|---|
| | [0023]; Figs. 3A-3B (Ex. 1005); Harakawa ¶ [0016]; Fig. 1 (Ex. 1006). |
| **(e) a caster wheel coupled to the arm, the caster wheel defining a rotational axis about which the caster wheel rotates,** | *See, e.g.*, Schaffner 9:15-17; 25:33-37; Figs. 5, 27; Goertzen abstract; p. 2, ll. 19-20; p. 2, ll. 28-29; p. 3, ll. 8-20; p. 6, ll. 11; p. 13, l. 19; Fig. 4A; claim 1 (Ex. 1003); Hosino 3:45-48; Figs. 1, 2 (Ex. 1004); Harakawa ¶ [0017]; Fig. 1 (Ex. 1006). |
| **(f) wherein the vertical position of the arm pivot axis with respect to the ground plane when the caster wheel and the drive wheel are in contact with the surface is spaced from and positioned relatively below a straight line drawn between the drive wheel axis and the rotational axis of the caster wheel, and** | *See, e.g.*, Hosino 2:36-44; 3:66-4:23; 6:50-7:9; Figs. 1-7; 9, 11 (Ex. 1004); Mulhern '420 ¶¶ [0022]-[0026]; Fig. 1 (Ex. 1005); Harakawa abstract; ¶¶ [0016]-[0017], Fig. 1 (Ex. 1006). |
| **(g) wherein the arm is operatively coupled to the drive assembly such that the arm is configured to pivot about the arm pivot axis in response to torque created by rotation of the at least one drive wheel by the drive assembly so as to cause a responsive vertical movement of the caster wheel** | *See, e.g.*, Schaffner 23:12-23; 24:42-47; 26:53-27:10 (Ex. 1002); Goertzen abstract; p. 3, ll. 12-14; p. 8, l. 25-p. 9, l. 8; p. 10, ll. 11-24; p. 16, ll. 11-26; p. 18, ll. 1-14; Figs. 5B, 11B (Ex. 1003); Hosino 6:34-49; Fig. 9 (Ex. 1004). |

## B.    Independent Claim 7

Challenged claim 7 requires a wheelchair including: (a) a frame; (b) a pair of

drive wheels defining a drive wheel axis, (c) a drive assembly operatively coupled

to at least one drive wheel of the pair of drive wheels, the drive assembly

configured provide power to the at least one drive wheel to rotate the drive wheel

about the drive wheel axis to thereby cause the wheelchair to move relative to a surface that defines a ground plane; (d) an arm pivotably mounted to the frame at an arm pivot axis; (e) a caster wheel coupled to the arm, the caster wheel defining a rotational axis about which the caster wheel rotates; (f) wherein the vertical position of the arm pivot axis with respect to the ground plane when the caster wheel and drive wheel are in contact with the surface is spaced from and positioned relatively below a straight line drawn between the drive wheel axis and the rotational axis of the caster wheel; and (g) wherein the arm is operatively coupled to the drive assembly such that (i) the arm is configured to pivot about the arm pivot axis in response to torque created by rotation of the at least one drive wheel by the drive, and (ii) the arm is configured to pivot about the arm pivot axis in response to braking.

Limitations 7(a) – 7(f) are identical to limitations 1(a) – 1(f); claim limitation 7(g) is the same as limitation 1(g), but adds the requirement that the arm is configured to pivot about the arm pivot axis in response to braking.  All of the features of claim 7 are shown in the prior art.  *See* Richter Decl. ¶ 57 (Ex. 1008).

### 1.    Claim 7 is Unpatentable over Schaffner

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 7 is obvious in view of Schaffner.

As explained *supra* in Section VIII.A.1, Schaffner teaches all of the elements of 7(a) – 7(d), and renders obvious the caster wheel of limitation 7(e), for the same reasons it teaches the elements in claim limitations 1(a) – 1(d) and renders obvious the caster wheel limitation 7(e).  (Claim limitation 7(c) contains an additional requirement that the drive assembly be configured to "provide power to the at least one drive wheel" to rotate the wheel; Schaffner teaches this requirement, as explained *supra* in Section VIII.A.1.)  *See* Richter Decl. ¶ 59 (Ex. 1008).

In addition, Schaffner teaches an arm that is operatively coupled to the drive assembly such that the arm is configured to pivot about the arm pivot axis in response to torque created by rotation of the at least one drive wheel by the drive, and the arm is configured to pivot about the arm pivot axis in response to braking, as required by claim limitation 7(g).  As previously discussed in Section VIII.A.1, Schaffner teaches an arm that is configured to pivot about the arm pivot access in response to torque created rotation of the at least one drive wheel by the drive. Schaffner also discloses an arm that is configured to pivot about the arm pivot axis in response to braking: "[D]eceleration of drive wheel 16 results in the tendency of suspension member 310 to rotate in the opposite direction, namely clockwise …. This deceleration of drive wheels 16 causes suspension member 310 to rotate about

pivot point 84 in the direction of arrow AA in FIG. 30, causing anti-tip wheel 42 to move downwardly in FIG. 30." *See, e.g.*, Schaffner 23:28-31, 38-41 (Ex. 1002).

Schaffner, however, does not disclose an arm pivot axis having a vertical position when the caster wheel and the drive wheel are in contact with the ground surface that is positioned relatively below a line drawn between the drive wheel axis and the rotational axis of the caster wheel, as limitation 7(f) requires.  As explained *supra* in Section VIII.A.1, it would have been obvious for a person of skill in the art to adjust the vertical location of the arm pivot axis so that it was located below a line connecting the wheel axes.  *See* Richter Decl. ¶ 61 (Ex. 1008).  Accordingly, claim 7 is obvious over Schaffner.

### 2.    Claim 7 is Unpatentable over Schaffner in View of Any One of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the wheelchair of claim 7 is obvious in view of Schaffner combined with any one of the Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

As discussed *supra* in Section VIII.B.1, Schaffner discloses all of the limitations of claim 7 except for a caster wheel coupled to the front arm (limitation 7(e)) and a vertical position of the arm pivot axis that is located below a line drawn between the drive wheel axis and the rotational axis of the front caster wheel when the wheels are on the ground surface (limitation 7(f)).  As further discussed *supra*

in Sections VIII.A.2.a)-VIII.A.2.c), these limitations are disclosed or rendered

obvious by any of Hosino, Mulhern '420, or Harakawa (*i.e.*, the "Low Pivot

References").  Accordingly, claim 7 is rendered obvious by Schaffner in view of

any of the Low Pivot References.  *See* Richter Decl. ¶ 63 (Ex. 1008).

### 3. Claim 7 is Unpatentable over Goertzen in View of Any One of the Low Pivot References

As shown in the summary chart below and in the Richter Declaration, the

wheelchair of claim 7 is obvious in view of Goertzen combined with any one of the

Low Pivot References (*i.e.*, Hosino, Mulhern '420, or Harakawa).

As explained *supra* in Section VIII.A.3, Goertzen teaches all of the elements

in claim limitations 7(a) – 7(e) for the same reasons it teaches the elements in

claim limitations 1(a) – 1(e), which are identical to limitations 7(a) – 7(e).  (Claim

limitation 7(c) contains an additional requirement that the drive assembly be

configured to "provide power to the at least one drive wheel" to rotate the wheel;

Goertzen teaches this requirement, as explained *supra* in Section VIII.A.3.)  *See*

Richter Decl. ¶ 65 (Ex. 1008).In addition, Goertzen teaches an arm that is

operatively coupled to the drive assembly such that the arm is configured to pivot

about the arm pivot axis in response to torque created by rotation of the at least one

drive wheel by the drive, and the arm is configured to pivot about the arm pivot

axis in response to braking, as required by claim limitation 7(g).  As previously

discussed in Section VIII.A.3, Goertzen teaches an arm that is configured to pivot about the arm pivot access in response to torque created rotation of the at least one drive wheel by the drive.  Goertzen also discloses an arm that is configured to pivot about the arm pivot axis in response to braking:

> Referring now to Figure 4C, a free body diagram illustrating the forces acting on wheelchair 100 when the wheelchair is decelerating is shown.  The forces are the same as those of Figure 4A, except that a deceleration force Fd is acting on drive wheel 102 instead of an acceleration force Fa.  A similar force acts on drive wheel 104.  The moment generated by the deceleration force Fd causes pivot arm 132 to rotate in the same direction as the moment generated by spring force Fs, i.e., clockwise as shown.  If front caster 106 is not contacting the ground, this pivot arm rotation causes front caster 106 to lower until it makes contact with the ground.

*See* Goertzen p. 9, ll. 9-16 (Ex. 1003).  Figure 4C is reproduced below:



**Goertzen, Figure 4C (Ex. 1003)**

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

Goertzen, however, does not disclose an arm pivot axis having a vertical position when the caster wheel and the drive wheel are in contact with the ground surface that is positioned relatively below a line drawn between the drive wheel axis and the rotational axis of the caster wheel.  As discussed *supra* in Sections VIII.A.2.a)-VIII.A.2.c), the Low Pivot References disclose an arm pivot axis that is below the line connecting the drive wheel axis and the caster wheel axis, as required by limitation 7(f).  *See* Richter Decl. ¶ 67 (Ex. 1008).  For the same reasons discussed *supra*, claim 7 is rendered obvious by Goertzen view of any one of the Low Pivot References.

In summary, the chart below identifies where the above prior art references disclose and/or make obvious the limitations of claim 7 of the '334 patent.

| **Claim 7**: **A wheelchair comprising:** | *See, e.g.*, Schaffner abstract; 5:44-54; Figs. 1, 27 (Ex. 1002); Goertzen abstract, p. 5, ll. 12-15, Fig. 1 (Ex. 1003); Hosino abstract; 1:51-55; Fig. 1 (Ex. 1004); Mulhern '420 abstract, Fig. 1 (Ex. 1005); Harakawa abstract; ¶¶ [0001], [0011]; Fig. 1 (Ex. 1006). |
|---|---|
| **(a) a frame;** | *See, e.g.*, Schaffner abstract; 25:33-37; Fig. 27 (Ex. 1002); Goertzen p. 2, ll. 15-17; p. 2, ll. 26-28; p. 5; ll. 21-24; p.6; l. 16; Fig. 3 (Ex. 1003); Hosino 5:19-28; Fig. 1 (Ex. 1004); Mulhern '420 abstract; ¶ [0019] (Ex. 1005); Harakawa abstract; ¶¶ [0001];  [0011], [0016], Fig. 1 (Ex. 1006). |

| | |
|---|---|
| **(b) a pair of drive wheels defining a drive wheel axis;** | *See, e.g.*, Schaffner abstract; 2:36-41; 5:50-54; 26:41-47; Fig. 27 (Ex. 1002); Goertzen p. 2, ll. 21-22; p. 3, ll. 22-27; p. 5, ll. 13-14 (Ex. 1003); Hosino abstract; 7:40-42 (Ex. 1004); Mulhern '420 ¶¶[0020],[0051] (Ex. 1005); Harakawa Fig. 1 (Ex. 1006). |
| **(c) a drive assembly operatively coupled to at least one drive wheel of the pair of drive wheels, the drive assembly configured to provide power to the at least one drive wheel to rotate the drive wheel about the drive wheel axis to thereby cause the wheelchair to move relative to a surface that defines a ground plane;** | *See, e.g.*, Schaffner abstract, 2:41-60; 6:30-36; 8:60-66; 16:66-17:5; 23:12-17; 26:41-52; Fig. 27 (Ex. 1002); Goertzen p. 2, ll. 21-25; p. 6, ll. 4-6 (Ex. 1003); Hosino 2:5-8; 3:48-51, 55-57 (Ex. 1004); Mulhern '420 ¶ [0020] (Ex. 1005); Harakawa ¶ [0018], Fig. 1 (Ex. 1006). |
| **(d) an arm pivotably mounted to the frame at an arm pivot axis;** | *See, e.g.*, Schaffner 25:59-63; 26:33-30, Fig. 27 (Ex. 1002); Goertzen abstract; p. 2, ll. 6-8, 17-19, 28-30; p. 6, ll. 11-15; p. 7, ll. 24-26; p. 13, ll. 22-24; p. 14, ll. 14-15; Figs. 4A, 10A (Ex. 1003); Hosino 3:66-4:23; Fig. 2 (Ex. 1004); Mulhern '420 ¶¶ [0022]-[0023]; Figs. 3A-3B (Ex. 1005); Harakawa ¶ [0016]; Fig. 1 (Ex. 1006). |
| **(e) a caster wheel coupled to the arm, the caster wheel defining a rotational axis about which the caster wheel rotates,** | *See, e.g.*, Schaffner 9:15-17; 25:33-37; Figs. 5, 27; Goertzen abstract; p. 2, ll. 19-20; p. 2, ll. 28-29; p. 3, ll. 8-20; p. 6, ll. 11; p. 13, l. 19; Fig. 4A; claim 1 (Ex. 1003); Hosino 3:45-48; Figs. 1, 2 (Ex. 1004); Harakawa ¶ [0017]; Fig. 1 (Ex. 1006). |
| **(f) wherein the vertical position of the arm pivot axis with respect to the ground plane when the caster wheel and the drive wheel are in contact with the surface is spaced from and positioned relatively** | *See, e.g.*, Hosino 2:36-44; 3:66-4:23; 6:50-7:9; Figs. 1-7; 9, 11 (Ex. 1004); Mulhern '420 ¶¶ [0022]-[0026]; Fig. 1 (Ex. 1005); Harakawa abstract; ¶¶ [0016]-[0017], Fig. 1 (Ex. 1006). |

| | |
|---|---|
| below a straight line drawn between the drive wheel axis and the rotational axis of the caster wheel, and | |
| (g) wherein the arm is operatively coupled to the drive assembly such that (i) the arm is configured to pivot about the arm pivot axis in response to torque created by rotation of the at least one drive wheel by the drive, and (ii) the arm is configured to pivot about the arm pivot axis in response to braking. | *See, e.g.,* Schaffner 23:12-23, 27-41; 24:42-47, 55-60; 26:53-27:10 (Ex. 1002); Goertzen abstract; p. 3, ll. 12-14; p. 8, l. 25-p. 9, l. 8; p. 9, ll. 9-18; p. 10, ll. 11-24; p. 16, ll. 11-26; p. 16, l. 27-p. 17, l. 6; p. 18, ll. 1-14, p. 19, ll. 10-18 (Ex. 1003); Hosino 6:44-49, Fig. 9 (Ex. 1004). |

## C.   The Dependent Claims Are Unpatentable

Each of the dependent claims discussed below is directed to subsidiary features of the claimed wheelchair, and it would be obvious to add their respective limitations to the independent claims.

### 1.   Claims 2 and 9 are Unpatentable Over Schaffner in View of Any of the Low Pivot References, or Goertzen in View of Any of the Low Pivot References and Further in View of Either Schaffner or Clark

Claims 2 and 9 depend from independent claims 1 and 7, respectively, which as discussed *supra* are unpatentable.  Claims 2 and 9 are obvious over Schaffner in view of any of the Low Pivot References, or Goertzen in view of any of the Low Pivot References and further in view of either Schaffner or Clark.

Claims 2 and 9 recite a drive assembly that is pivotally coupled to the frame at a drive assembly pivot axis that is substantially vertically aligned with the arm pivot axis.  Schaffner teaches a powered wheelchair that has a drive assembly pivot axis 90 and a separate front arm pivot axis 230, as shown in Figure 27: "This pivotal connection of the drive motor-transmission housing 80 to frame 12 via pivotal connection 90 of ear portion 86 with eye portion 82 provides active



**Schaffner, Fig. 27 (Ex. 1002)**

independent suspension for the combination of motor 76 and transmission 78 in housing 80, and associated drive wheel 16."  *See* Schaffner 26:47-52 (Ex. 1002).  "With this arrangement, upon an anti-tip wheel 42 encountering an obstacle or upon wheelchair 10 pitching forwardly, anti-tip wheels 42 move arcuately, together with U-shaped spindle 228, as they pivot about pivotal connection 230 relative to frame 12."  *See id.* 25:59-63 (Ex. 1002).

It would have been obvious to a person of ordinary skill in the art to arrange these pivots to be substantially vertically aligned.  One of ordinary skill in the art would understand that the relative positions of pivots 90 and 230 could be modified by moving the pivot 90 forward and/or the pivot 230 rearward to suit

48

particular design criteria, and arranging the pivots in a substantially vertical

alignment would be an obvious design choice based on a finite number of possible

locations for the two pivots with a reasonable expectation of success.  In *Inter*

*Partes* Reexamination 95/002,355 of the '992 parent patent, the examiner agreed

with the Third Party Requester that a person of ordinary skill in the art would

understand that pivots 90 and 230 could be modified to be placed in a substantially

vertical alignment, and doing so would be an obvious design choice.  *See*

4/24/2013 Action Closing Prosecution of *Inter Partes* Reexamination Control No.

95/002,355 at 13-14.

    Clark also teaches a

powered wheelchair that has a

drive assembly pivot axis 44 and a

separate front arm pivot axis 80,

as shown in Figure 2 (reproduced

below).  *See* Clark p. 6, ll. 2-8, p.

9, ll. 26-30 (Ex. 1007).



**Clark, Figure 2 (Ex. 1007)**

    It would have been obvious to a person of ordinary skill in the art to arrange

these pivots to be substantially vertically aligned.  One of ordinary skill in the art

would understand that the relative positions of pivots 44 and 80 could be modified

by moving the pivot 44 rearward and/or the pivot 80 forward to suit particular

design criteria, and arranging the pivots in a substantially vertical alignment would be an obvious design choice based on a finite number of possible locations for the two pivots with a reasonable expectation of success.  *See* Richter Decl. ¶ 74 (Ex. 1008).

| Claims 2 and 9: The wheelchair of claim [1 or 7], wherein the drive assembly is pivotally coupled to the frame at a drive assembly pivot axis that is substantially vertically aligned with the arm pivot axis. | *See, e.g.*, Schaffner 25:59-63; 26:47-52; Fig. 27 (Ex. 1002); Clark 6:2-8; 9:26-30 ; Fig. 2 (Ex. 1007). |
|---|---|

Because wheelchairs with a drive assembly pivotally coupled to the frame at a drive assembly pivot axis and having a separate arm pivot axis were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claims 1 or 7, and to further modify it by vertically aligning the two pivot axes.  *See* Richter Decl. ¶ 75 (Ex. 1008).  This amounts to a routine design choice that would have a reasonable expectation of success.  Accordingly, claims 2 and 9 are not patentable.

> **2.    Claims 3 and 10 are Unpatentable over Schaffner in View of Any of the Low Pivot References, or Goertzen in View of Any of the Low Pivot References and Further in View of Schaffner**

Claims 3 and 10 depend from claims 2 and 9, respectively, which as discussed *supra* are unpatentable.  Claims 3 and 10 are obvious over Schaffner in View of Any of the Low Pivot References, or Goertzen in View of any one of the Low Pivot References and further in view of Schaffner.



**FIG. 27**

**Schaffner, Figure 27 (Ex. 1002)**

Claims 3 and 10 recite a suspension link connecting the drive assembly to the arm, the suspension link operatively transferring motion of the drive assembly to the arm to cause the arm to rotate about its pivotal mounting in response to the torque created in rotation of the drive wheels.  Schaffner teaches a powered wheelchair having a suspension link transferring motion of the motor 76 to the front arm 228. As shown in Figure 27, a series of links – vertical link 268, pivoting beam 270, motor link 272, and intermediate link 274 – connect together to connect motor 76 to front arm 228 : "The linkage consisting of pivoting beam 270, vertical link 268 and intermediate line 274 transfer motion between the rear end of motor/transmission housing 80 remote from pivot point 90 and forward anti-tip wheels 42, thereby accomplishing indirectly the same action/reaction of these

51

components to drive wheel acceleration/deceleration as accomplished by the direct connection structure illustrated in FIGS. 28 through 37." *See* Schaffner 26:53-27:10 (Ex. 1002).

| | |
|---|---|
| **Claim 3**: The wheelchair of claim 2, further comprising a suspension link connecting the drive assembly to the arm, the suspension link operatively transferring motion of the drive assembly to the arm to cause the arm to rotate about its pivotal mounting in response to the torque created in rotation of the drive wheels. | *See, e.g.*, Schaffner 26:53-27:10, Fig. 27 (Ex. 1002). |
| **Claim 10**: The wheelchair of claim 9, further comprising a suspension link connecting the drive assembly to the arm, the suspension link operatively transferring to the arm, motion of the drive assembly about its pivotal mounting in response to the torque created in rotation of the drive wheels. | *See, e.g.*, Schaffner 26:53-27:10, Fig. 27 (Ex. 1002). |

Because wheelchairs with a suspension link connecting the drive assembly to the forward arm to rotate the arm around its pivotal mounting in response to torque created by rotating the drive wheels were known in the art, it would have been obvious to one of ordinary skill in the art to use such a structure in the wheelchair of claims 2 or 9. *See* Richter Decl. ¶ 78 (Ex. 1008). This amounts to a routine design choice that would have yielded predictable results. Accordingly, claims 3 and 10 are not patentable.

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

### 3. Claims 4 and 11 are Unpatentable over Schaffner in View of Any of the Low Pivot References or Goertzen in View of Any One of the Low Pivot References

Claims 4 and 11 depend from independent claims 1 and 7, respectively, which as discussed *supra* are unpatentable. Claims 4 and 11 are obvious over Schaffner in view of any of the Low Pivot References or Goertzen in view of any of the Low Pivot References.

Claims 4 and 11 recite a caster wheel that is a front caster wheel. Goertzen discloses a powered wheelchair having front caster wheels 106 and 108. *See, e.g.*, Goertzen p. 6, l. 11; Fig. 3 (Ex. 1003). Hosino teaches a front caster wheel 3a. *See, e.g.*, Hosino 3:45-48; Fig. 1 (Ex. 1005). Harakawa also teaches a front caster wheel 14. *See, e.g.*, Harakawa Fig. 1 (Ex. 1006). As discussed *supra* in Section VIII.A.1, it would have been obvious to use front caster wheels instead of the front anti-tip wheels as disclosed in Schaffner. *See* Richter Decl. ¶ 80 (Ex. 1008).

| | |
|---|---|
| **Claims 4 and 11: The wheelchair of claim [1 or 7], wherein the caster wheel is a front caster wheel.** | *See, e.g.*, Goertzen p. 6, l. 11; Fig. 3 (Ex. 1003); Hosino 3:37-41,45-48; 4:21-23; 6:9-13; 6:50-54; 7:3-9; 7:22 (Ex. 1005); Harakawa ¶ [0017], Fig. 1 (Ex. 1006). |

Because wheelchairs with front caster wheels were known in the art, it would have been obvious to one of ordinary skill in the art to use a front caster wheel in the wheelchair of claims 1 or 7. *See* Richter Decl. ¶ 81 (Ex. 1008). This

53

would have been a combination of old elements yielding nothing but predictable

results. Accordingly, claims 4 and 11 are not patentable.

### 4. Claims 5 and 12 are Unpatentable over Schaffner in View of Any of the Low Pivot References or Goertzen in View of Any of the Low Pivot References

Claims 5 and 12 depend from independent claims 1 and 7, respectively,

which as discussed *supra* are unpatentable. Claims 5 and 12 are obvious over

Schaffner in view of any of the Low Pivot References or Goertzen in view of any

one of the Low Pivot References.

Claims 5 and 12 recite an arm that is configured to pivot about the arm pivot

axis in response to braking so as to cause the caster wheel to apply a force to the

surface. Schaffner discloses an arm that is configured to pivot about the arm pivot

axis in response to braking: "[D]eceleration of drive wheel 16 results in the

tendency of suspension member 310 to rotate in the opposite direction, namely

clockwise …. This deceleration of drive wheels 16 causes suspension member 310

to rotate about pivot point 84 in the direction of arrow AA in FIG. 30, causing anti-

tip wheel 42 to move downwardly in FIG. 30." *See, e.g.*, Schaffner 23:28-31, 38-

41 (Ex. 1002). Schaffner also teaches a downward force applied to the front

wheels during deceleration: "As the rear of suspension member 310 rises during

deceleration, this exerts downward force on anti-tip wheels 42 which effectively

increases the anti-tip force provided by spring 236." *See, e.g.*, *id.* 24:57-60 (Ex. 1002).

Goertzen also teaches a powered wheelchair with a front arm that is configured to pivot about the pivot axis in response to deceleration so as to cause the caster wheel to apply a force to the surface:

> Referring now to Figure 4C, a free body diagram illustrating the forces acting on wheelchair 100 when the wheelchair is decelerating is shown. The forces are the same as those of Figure 4A, except that a deceleration force Fd is acting on drive wheel 102 instead of an acceleration force Fa. A similar force acts on drive wheel 104. The moment generated by the deceleration force Fd causes pivot arm 132 to rotate in the same direction as the moment generated by spring force Fs, i.e., clockwise as shown. If front caster 106 is not contacting the ground, this pivot arm rotation causes front caster 106 to lower until it makes contact with the ground. If front caster 106 is already contacting the ground, then no further movement of front caster 106 is possible. Hence, when wheelchair 100 decelerates, front caster 106 is **urged towards the ground.**"

*See* Goertzen p. 9, ll. 9-18 (Ex. 1003) (emphasis added). Figure 4C is reproduced below:



**Goertzen, Figure 4C (Ex. 1003)**

| | |
|---|---|
| **Claims 5 and 12: The wheelchair of claim [1 or 7], wherein the arm is configured to pivot about the arm pivot axis in response to braking [torque] so as to cause the caster wheel to apply a force to the surface.** | *See, e.g.*, Schaffner 23:28-31, 38-41; 24:57-60 (Ex. 1002); Goertzen p. 9, ll. 9-18; p. 16, l. 27-p. 17, l. 6; Fig. 4C (Ex. 1003). |

Because wheelchairs with arms configured to pivot about the arm pivot axis in response to braking so as to cause the caster wheel to apply a force to the surface were known in the art, it would have been obvious to one of ordinary skill in the art to use a front caster wheel in the wheelchair of claims 1 or 7. *See* Richter Decl. ¶ 85 (Ex. 1008). This would have been a combination of old elements yielding nothing but predictable results. Accordingly, claims 5 and 12 are not patentable.

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

### 5.      Claims 6 and 13 are Unpatentable over Schaffner in View of Any of the Low Pivot References or Goertzen in View of Any One of the Low Pivot References

Claims 6 and 13 depend from independent claims 1 and 7, respectively, which as discussed *supra* are unpatentable.  Claims 6 and 13 are obvious over Schaffner in view of any of the Low Pivot References or Goertzen in view of any one of the Low Pivot References.

Claims 6 and 13 recite an arm that is configured to pivot about the arm pivot axis to enable the caster wheel to move downwardly and engage a surface that is lower than the ground plane in response to braking.  Schaffner teaches a wheelchair where the front arm pivots to enable the front anti-tip wheels to engage a surface that is lower than the ground plane:

> This deceleration of drive wheels 16 causes suspension member 310 to rotate about pivot point 84 in the direction of arror AA in FIG. 30, causing anti-tip wheel 42 to move downwardly in FIG. 30.  As a result, power wheelchair 10 desirably makes contact with lower path 326 prior to drive wheel 16 reaching edge 322 separating raised path 324 from lower path 326.  This permits power wheelchair 10 to travel over drop-offs and curbs, such as represented by edge 322, of substantially greater height than otherwise possible.

*See, e.g.*, Schaffner 23:38-47, Fig. 30 (Ex. 1002).

Goertzen also teaches a powered wheelchair where the arm pivots about the arm pivot axis to enable the front caster wheel to engage a surface that is lower than the ground plane:

> In Figure 6B, front casters 106 and 108 have gone over curb 602 and are in contact with the new lower elevation.  As front casters 106 and 108 go over the curb or obstacle 602, they are urged downward toward the new lower elevation by the force generated by springs 144 and 146.

*See* Goertzen p. 11, ll. 18-22 (Ex. 1003).  As explained above in Section VIII.B.1, Goertzen further teaches an arm that pivots around the arm pivot axis to cause the caster wheel to move downwardly in response to braking.  *See* Goertzen p. 9, ll. 9-16 (Ex. 1003).

| | |
|---|---|
| **Claims 6 and 13: The wheelchair of claim [1 or 7], wherein the [suspension] arm is configured to pivot about the [suspension] arm pivot axis to enable the caster wheel to move downwardly and engage a surface that is lower than the ground plane in response to braking.** | *See, e.g.*, Schaffner 23:38-47, Fig. 30  (Ex. 1002); Goertzen p. 9, ll. 9-16; p. 11, ll. 18-22; p. 16, l. 27-p. 17, l. 6  (Ex. 1003). |

Because wheelchairs with arms configured to pivot about the arm pivot axis to enable the caster wheel to move downwardly and engage a surface lower than the ground plane were known in the art, it would have been obvious to one of ordinary skill in the art to include such arms in the wheelchair of claims 1 or 7. *See* Richter Decl. ¶ 89 (Ex. 1008).  This would have been a combination of known

elements yielding nothing but predictable results.  Accordingly, claims 6 and 13 are not patentable.

> ### 6.   Claim 8 is Unpatentable over Schaffner in View of Any of the Low Pivot References or Goertzen in View of Any of the Low Pivot References

Claim 8 depends from independent claim 7, which as discussed *supra* is unpatentable.  Claim 8 is obvious over Schaffner in view of any of the Low Pivot References or Goertzen in view of any one of the Low Pivot References.

Claim 8 recites a caster wheel that is a front caster wheel and an arm that is configured to pivot about the arm pivot axis in response to torque created by forward rotation of the at least one drive wheel so as to cause a responsive vertically upward movement of the caster wheel.  As discussed above in Section VIII.C.3, Goertzen, Hosino, and Harakawa all disclose front caster wheels.  As further discussed above in Sections VIII.A.1 and VIII.A.3 respectively, Schaffner and Goertzen disclose a front arm that pivots about the arm pivot axis in response to torque created by forward rotation of the drive wheels so as to cause a vertically upward movement of the front wheels.

| Claim 8: The wheelchair of claim 7, wherein the caster wheel is a front caster wheel and the arm is configured to pivot about the arm pivot axis in response to torque created by forward rotation of the at least one drive wheel by the drive assembly so as to cause a responsive | *See, e.g.*, Schaffner 10:1-7; 23:12-23; 24:42-47; 26:53-27:10; Fig. 1 (Ex. 1002); Goertzen p. 2, ll. 22-25; p. 3, ll. 7-12; p. 8, l. 23-p 9, l. 8; p. 16, ll. 11-26; (Ex. 1003); Hosino 3:37-41,45-48; 4:21-23; 6:9-13; 6:50-54; 7:3-9; 7:22 (Ex. |
|---|---|

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

| | |
|---|---|
| **vertically upward movement of the caster wheel.** | 1005); Harakawa ¶ [0017], Fig. 1 (Ex. 1006). |

Because wheelchairs with front caster wheels and arms that are configured to pivot about the pivot axis in response to torque created by the drive wheel so as to vertically raise the front caster wheels were known in the art, it would have been obvious to one of ordinary skill in the art to include such front caster wheels and front arms in the wheelchair of claim 7.  *See* Richter Decl. ¶ 92 (Ex. 1008).  This would have been a combination of old elements yielding nothing but predictable results.  Accordingly, claim 8 is not patentable.


Based on the foregoing, claims 1-13 of the '598 patent recite subject matter that is obvious.  The Petitioner requests institution of an *inter partes* review to cancel those claims.


Respectfully submitted,

Permobil, Inc.,
Petitioner


Customer Number: 24395

By: /David L. Cavanaugh/
David L. Cavanaugh
Registration No. 36,476
Wilmer Cutler Pickering
Hale and Dorr LLP

Tel: 202-663-6025
Fax: 202-663-6363

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 1, 2013, I caused a true and correct copy of the foregoing materials:

- Petition for *Inter Partes Review* of U.S. Patent No. 8,408,598 Under 35 U.S.C. § 312 and 37 C.F.R. § 42.104

- Exhibits 1001-1014

- List of Exhibits for Petition for *Inter Partes* Review of U.S. Patent No. 8,408,598 (Exhibits 1001-1014)

- Fee Authorization

- Power of Attorney

to be served via Federal Express on the following attorney of record as listed on PAIR:

Gary H. Levin
Woodcock Washburn, LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

/David L. Cavanaugh/

David L. Cavanaugh

Registration No. 36,476

1

U.S. Patent 8,408,598
Petition for *Inter Partes* Review

# LIST OF EXHIBITS FOR
# PETITION FOR *INTER PARTES* REVIEW OF
# U.S. PATENT NO. 8,408,598

| Exhibit | Description |
|---------|-------------|
| 1001 | U.S. Patent No. 8,408,598, entitled "Anti-Tip System For a Power Wheelchair," to Mulhern *et al.*, issued Apr. 2, 2013. |
| 1002 | U.S. Patent No. 6,129,165, entitled "Curb-Climbing Power Wheelchair" to Schaffner *et al.*, issued Oct. 10, 2000 ("Schaffner") |
| 1003 | PCT Publication No. WO 02/34190, entitled "Obstacle Traversing Wheelchair" to Goertzen, published May 2, 2002 ("Goertzen") |
| 1004 | U.S. Patent No. 6,454,286, entitled "Traveling Device For Smooth and Stable Movement On Uneven and Inclined Surfaces," to Hosino, issued Sept. 24, 2002.  ("Hosino") |
| 1005 | U.S. Patent Application Publication No. 2003/0205420, entitled "Active Anti-Tip System For Power Wheelchairs," to Mulhern *et al.*, published Apr. 14, 2005.  ("Mulhern '420") |
| 1006 | Japanese Patent Application Publication No. JP 2001104391, entitled "Wheelchair," to Harakawa, published Apr. 17, 2001. ("Harakawa") |
| 1007 | Canadian Patent Application No. 2,254,372, entitled "Motorized Wheelchair," to Clark *et al.*, published May 17, 2000 ("Clark" ). |
| 1008 | Declaration of W. Mark Richter, Ph.D. |
| 1009 | U.S. Patent No. 8,181,992, entitled "Anti-Tip System For a Power Wheelchair," to Mulhern *et al.*, issued May 22, 2012. |
| 1010 | File History of U.S. Patent No. 8,181,992 Reexamination, 4/24/2013 Action Closing Prosecution |
| 1011 | U.S. Patent No. 8,408,598 File History, 11/5/12 Amendment |
| 1012 | U.S. Patent No. 8,408,598 File History, 6/15/12 Non-Final Office Action |
| 1013 | U.S. Patent No. 8,408,598 File History, 12/21/12 Office Action |
| 1014 | U.S. Patent No. 8,408,598 File History, 2/4/13 Reply to Office Action |

# Exhibit 2



United States Patent and Trademark Office

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

*Inter Partes* Reexamination Filing Data - September 30, 2012

1. Total requests filed since start of *inter partes* reexam on 11/29/99.................................. 1919

2. Number of Filings by dicipline

| | | |
|---|---|---|
| a. Chemical Operation | 350 | 18% |
| b. Electrical Operation | 985 | 51% |
| c. Mechanical Operation | 564 | 29% |
| d. Design Patents | 20 | 1% |

3. Annual *Inter Partes* Reexam Filings

| Fiscal Yr. | No | Fiscal Yr. | No | Fiscal Yr. | No | Fiscal Yr. | No |
|---|---|---|---|---|---|---|---|
| 2000 | 0 | 2004 | 27 | 2008 | 168 | 2012 | 530 |
| 2001 | 1 | 2005 | 59 | 2009 | 258 | | |
| 2002 | 4 | 2006 | 70 | 2010 | 281 | | |
| 2003 | 21 | 2007 | 126 | 2011 | 374 | | |

4. Number known to be in litigation................................................................ 1272   66%

5. Decisions on requests.................................................................................. 1789

| | | |
|---|---|---|
| a. No. granted................................................................ | 1682 | 94% |
| (1) By examiner | 1673 | |
| (2) By Director (on petition) | 9 | |
| b. No. denied................................................................ | 107 | 6% |
| (1) By examiner | 101 | |
| (2) Reexam vacated | 6 | |

6. Overall reexamination pendency (Filing date to certificate issue date)

| | |
|---|---|
| a. Average pendency | 39.5 (mos.) |
| b. Median pendency | 34.1 (mos.) |

7. Total *Inter partes* reexamination certificates issued (1999 – present) ........................... 398

| | | |
|---|---|---|
| a. Certificates with all claims confirmed | 44 | 11% |
| b. Certificates with all claims canceled (or disclaimed) | 169 | 42% |
| c. Certificates with claims changes | 160 | 40% |

# Exhibit 3

PATENT AND TRADEMARK OFFICE
Process Production Report
Preliminary Report

| Patent Trial & Appeal Board | FY2012 Actual | FY2013 Oct. | FY2013 Nov. | FY2013 Dec. | FY2013 Jan. | FY2013 Feb. | FY2013 Mar. | FY2013 Apr. | FY2013 May | FY2013 Jun. | FY2013 Jul. | FY2013 Aug. | FY2013 Sep. | FY2013 Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CONTESTED CASES** | | | | | | | | | | | | | | |
| **Inter Partes Review** | | | | | | | | | | | | | | |
| Petitions Filed | | | | | | | | | | | | | | |
| Monthly | | 24 | 24 | 32 | 24 | 30 | 38 | 27 | 45 | | | | | |
| Year-to-date | 17 | 41 | 65 | 97 | 121 | 151 | 189 | 216 | 261 | 261 | 261 | 261 | 261 | **261** |
| Trials Instituted | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 1 | 3 | 10 | 22 | 13 | 37 | | | | | |
| Year-to-date | 0 | 0 | 0 | 1 | 4 | 14 | 36 | 49 | 86 | 86 | 86 | 86 | 86 | **86** |
| Trials Not Instituted | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 0 | 0 | 2 | 0 | 4 | 2 | | | | | |
| Year-to-date | 0 | 0 | 0 | 0 | 0 | 2 | 2 | 6 | 8 | 8 | 8 | 8 | 8 | **8** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 0 | 0 | 1 | 2 | 0 | 3 | | | | | |
| Year-to-date | 0 | 0 | 0 | 0 | 0 | 1 | 3 | 3 | 6 | 6 | 6 | 6 | 6 | **6** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | 17 | 41 | 65 | 97 | 121 | 148 | 184 | 207 | 247 | 247 | 247 | 247 | 247 | **247** |
| **Transitional Program for** | | | | | | | | | | | | | | |
| **Covered Business Method** | | | | | | | | | | | | | | |
| Petitions Filed | | | | | | | | | | | | | | |
| Monthly | | 5 | 2 | 0 | 0 | 0 | 2 | 4 | 7 | | | | | |
| Year-to-date | 8 | 13 | 15 | 15 | 15 | 15 | 17 | 21 | 28 | 28 | 28 | 28 | 28 | **28** |
| Trials Instituted | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 0 | 5 | 3 | 4 | 0 | 0 | | | | | |
| Year-to-date | 0 | 0 | 0 | 0 | 5 | 8 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | **12** |
| Trials Not Instituted | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 0 | 0 | 2 | 1 | 0 | 0 | | | | | |
| Year-to-date | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | **3** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | | | | |
| Year-to-date | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | **0** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | 8 | 13 | 15 | 15 | 15 | 13 | 14 | 18 | 25 | 25 | 25 | 25 | 25 | **25** |

PATENT AND TRADEMARK OFFICE
Process Production Report
Preliminary Report

| Patent Trial & Appeal Board | FY2012 Actual | FY2013 Oct. | FY2013 Nov. | FY2013 Dec. | FY2013 Jan. | FY2013 Feb. | FY2013 Mar. | FY2013 Apr. | FY2013 May | FY2013 Jun. | FY2013 Jul. | FY2013 Aug. | FY2013 Sep. | FY2013 Actual |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Interferences** | | | | | | | | | | | | | | |
| Cases Declared | | | | | | | | | | | | | | |
| Monthly | | 3 | 2 | 1 | 3 | 1 | 4 | 11 | 6 | | | | | |
| Year-to-date | 56 | 3 | 5 | 6 | 9 | 10 | 14 | 25 | 31 | 31 | 31 | 31 | 31 | **31** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 10 | 8 | 4 | 3 | 1 | 2 | 6 | 2 | | | | | |
| Year-to-date | 62 | 10 | 18 | 22 | 25 | 26 | 28 | 34 | 36 | 36 | 36 | 36 | 36 | **36** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | **53** | **46** | **40** | **37** | **37** | **37** | **39** | **44** | **48** | **48** | **48** | **48** | **48** | **48** |
| **Ex Parte Reexams Appeals** | | | | | | | | | | | | | | |
| Cases Received | | | | | | | | | | | | | | |
| Monthly | | 10 | 11 | 5 | 13 | 7 | 4 | 7 | 11 | | | | | |
| Year-to-date | 115 | 10 | 21 | 26 | 39 | 46 | 50 | 57 | 68 | 68 | 68 | 68 | 68 | **68** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 2 | 12 | 13 | 7 | 7 | 11 | 11 | 13 | | | | | |
| Year-to-date | 119 | 2 | 14 | 27 | 34 | 41 | 52 | 63 | 76 | 76 | 76 | 76 | 76 | **76** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | **22** | **30** | **29** | **21** | **27** | **27** | **20** | **16** | **14** | **14** | **14** | **14** | **14** | **14** |
| **Inter Partes Reexam Appeals** | | | | | | | | | | | | | | |
| Cases Received | | | | | | | | | | | | | | |
| Monthly | | 29 | 10 | 7 | 19 | 17 | 16 | 10 | 18 | | | | | |
| Year-to-date | 162 | 29 | 39 | 46 | 65 | 82 | 98 | 108 | 126 | 126 | 126 | 126 | 126 | **126** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 10 | 17 | 13 | 17 | 10 | 10 | 10 | 21 | | | | | |
| Year-to-date | 149 | 10 | 27 | 40 | 57 | 67 | 77 | 87 | 108 | 108 | 108 | 108 | 108 | **108** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | **64** | **83** | **76** | **70** | **72** | **79** | **85** | **85** | **82** | **82** | **82** | **82** | **82** | **82** |
| **EX PARTE APPEALS** | | | | | | | | | | | | | | |
| **Ex Parte Appeals*** | | | | | | | | | | | | | | |
| Cases Received | | | | | | | | | | | | | | |
| Monthly | | 1083 | 826 | 791 | 998 | 997 | 644 | 1173 | 821 | 0 | 0 | 0 | 0 | |
| Year-to-date | 12433 | 1083 | 1909 | 2700 | 3698 | 4695 | 5339 | 6512 | 7333 | 7333 | 7333 | 7333 | 7333 | **7333** |
| Cases Disposed | | | | | | | | | | | | | | |
| Monthly | | 819 | 941 | 889 | 1059 | 1012 | 1199 | 948 | 931 | 0 | 0 | 0 | 0 | |
| Year-to-date | 9912 | 819 | 1760 | 2649 | 3708 | 4720 | 5919 | 6867 | 7798 | 7798 | 7798 | 7798 | 7798 | **7798** |
| **Cases Pending** | | | | | | | | | | | | | | |
| **Year-to-date** | **26484** | **26748** | **26633** | **26535** | **26474** | **26459** | **25904** | **26129** | **26019** | **26019** | **26019** | **26019** | **26019** | **26019** |

*Ex parte appeals of applications for patents, not including ex parte reexamination or inter partes reexamination appeals.